In re **VILLA CAPRI OF GEORGIA AS-SOCIATES LIMITED PARTNERSHIP, a Connecticut Limited Partnership, Debtor.**

**Bankruptcy No. A89–06988–SWC.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

April 8, 1992.

John A. Christy, Atlanta, Ga., for debtor.

Parker, Johnson, Cooke & Dunlevie, Atlanta, Ga., for Federal Home Loan Mortgage.

## ORDER

STACEY W. COTTON, Bankruptcy Judge.

Before the court is an application for allowance of compensation to Parker, Johnson, Cooke & Dunlevie ("applicant") as attorneys for the Federal Home Loan Mortgage ("claimant" or "FHLMC"). Applicant seeks compensation pursuant to 11 U.S.C. § 506(b). The debtor vigorously objects to the application on various grounds. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) & (B). The court allows applicant compensation of $30,000.00 and expenses of $2,335.68, pursuant to 11 U.S.C. § 506(b) and disallows the balances requested. The court's findings of facts and conclusions are set forth hereinafter.

This is a single asset (apartment complex) Chapter 11 case. Claimant is an oversecured creditor with an indebtedness at confirmation of $3,591,374, secured by a first priority lien on debtor's apartment complex valued at $4,600,000. Thus, claimant was oversecured with an equity cushion of $1,008,625. Applicant requests allowance of compensation under 11 U.S.C. § 506(b) in the sum of $97,066.50 for professional services rendered and reimburse-

ment of expenses in the sum of $7,558.84. Debtor has objected strongly contending that this oversecured creditor waged an "all out war," that the services were excessive when considered *in toto* in light of the interests to be protected and the results achieved. Applicant contends the services were reasonable and necessary to protect claimant's interests.

This was not a complex case involving significant, novel or difficult questions of fact or law. The case involved the entry of cash collateral orders, which were principally resolved by negotiation and consent of the parties, the debtor's filing of a disclosure statement and plan of reorganization, objections to the disclosure statement and to confirmation of the plan, a discovery dispute, and finally an evidentiary hearing on confirmation.

## DISCUSSION

■ Allowance of attorney's fees is governed by principles enunciated in *Norman v. Housing Auth. of City of Montgomery et al.*, 836 F.2d 1292 (11th Cir.1988). In *Norman,* the Eleventh Circuit Court of Appeals, following the Supreme Court, adopted the "lodestar" approach as the proper standard for determining statutory fees. *Id.* at 1299; *See generally Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *City of Riverside et al. v. Rivera et al.,* 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986); *Pennsylvania et al. v. Delaware Valley Citizens' Council for Clean Air et al.,* 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) (Delaware Valley Citizens' Counsel I); *and Pennsylvania et al. v. Delaware Valley Citizens' Council for Clean Air et al.,* 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) (Delaware Valley Citizens' Counsel II). The lodestar approach multiplies reasonable hourly rates by the number of hours reasonably expended. The resulting figure may be adjusted by the quality of the results obtained. *See Hensley,* 461 U.S. at 429, 103 S.Ct. at 1937. Likewise, the lodestar amount may be enhanced where results are exceptional, the fee was contingent, or the delay in receipt of payment requires an adjustment in the amount of fees. These "enhancements" however are to be utilized with caution. The *Norman* approach includes the factors delineated in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974). The fee applicant bears the burden of proving the entitlement to an award of fees and expenses. *Norman,* 836 F.2d at 1303; *see also In re The Greenwich Showboat Ltd. Partnership,* 117 B.R. 54, 60 (Bankr. D.Conn.1990).

Under § 506(b) the debtor may be required to pay the attorney's fees of an oversecured creditor to the extent (1) they are reasonable, (2) they are necessary to protect the oversecured creditor's interests and (3) they are provided for "... under the agreement under which such claim arose." 11 U.S.C. § 506(b). There is no dispute that claimant's agreements provide for payment of its attorney's fees and expenses.

The application fails to note, with perhaps two exceptions, any novel or difficult legal issues. The only two issues which could possibly be construed as novel or difficult relate to (1) debtor's discovery requests which involved claimant's internal "trouble-loan" criteria, and (2) the appropriate loan interest rate for plan confirmation. Debtor has objected to this application on the general grounds that the services rendered and the expenses incurred are excessive, duplicative, and were not reasonably necessary to protect claimant's interests. The court will first consider whether applicant's services were generally necessary to protect claimant's interests and debtor's objections thereto.

■ 1. *Failure to File Ballot.* The debtor moved to have claimant, an impaired non-accepting oversecured creditor, deemed to have accepted its plan for failure to cast a ballot timely. While debtor could have simply ignored claimant's failure to vote, it chose not to do so. Claimant was therefore entitled to, and did, successfully defend itself against the motion. The court finds and concludes that services to defend debtor's motion were necessary to protect

claimant's position against the debtor's attack.

■ 2. *Discovery Disputes.* In preparation for the plan confirmation hearing, debtor sought discovery of claimant's internal, "trouble-loan" criteria. Claimant objected to debtor's discovery on the grounds of trade secret and "confidentiality". The fee application contains numerous hours for research, drafting written responses, preparation for hearings, preparation of witnesses, and defense of depositions of claimant's personnel in defending claimant or responding to debtor's discovery request. Based upon their own analysis, applicant expended 390.3 hours resulting in $46,794.50 in fees in connection with the debtor's discovery requests, while debtor contends that applicant spent 412.3 hours totalling $51,641.50.

In its March 1, 1991 response to debtor's objections, applicant states at page 8:

"The debtor attempted to use discovery to obtain information about FHLMC's internal methods for dealing with troubled loans and for setting interest rates. The information sought, if discovered, would give the debtor in this case and in related cases involving FHLMC and related entities of the debtor, information which it could have used in negotiations with FHLMC in this case and others. The discovery request was an ill-concealed attempt to harass and intimidate FHLMC as well as to gain an edge in negotiations with FHLMC in related cases involving affiliates of the debtor."

While contending that debtor's discovery request applied to this case, applicant notes at pages five and six of its March 1 response that claimant viewed the request as being advantageous to debtor's principal in connection with seven additional defaulted loans of this claimant which are secured by other apartment complexes and owned by related affiliates of the debtor.[1] Claimant asserts that the discovery requests potentially would have a nationwide effect on claimant's troubled loans policies and interest rates. It was for these reasons that claimant contested the debtor's discovery so vigorously.

Further, claimant even initiated diversionary discovery by subpoenaing the client list of debtor's counsel. The court agrees with the debtor that applicant now seeks compensation for time spent in this connection although it was totally unnecessary to the protection of claimant's interests. While some of the discovery services reasonably relate to this debtor, the amount of time spent by applicant in this case is significantly disproportionate to debtor's discovery effort and to the importance of these issues to the case. Thus, the court concludes that applicant's services and expenses in this regard were principally to protect claimant's national interests relating to its "troubled-loan" policies and defaulted loans of non-debtor related entities, rather than merely to oppose debtor's plan.

■ 3. *Confirmation Interest Rate Dispute.* Debtor's plan proposed an interest rate of 9.75% for claimant's oversecured claim. Claimant objected to this treatment contending, among other things, that the plan was not fair and equitable in that a 9.75% interest rate was below market. Although the original note provided an interest rate of 11.945%, claimant asserted that the proper plan rate should be 13%.

Prior to the confirmation hearing on July 26, 1990, the debtor amended its plan and increased the proposed interest rate to 10.-25%. After trial, the court found that an interest rate of 10.50% was required for plan confirmation. Upon debtor's further amendment, the court confirmed debtor's plan with an interest rate of 10.50%. Order of September 12, 1990, pp. 3–4. This was three-quarters of a percentage point above debtor's original proposal and one-

---

1. *See In re Devin Indian Creek, Ltd.,* Case No. A89–03522; *In re Devin King Garden, Ltd.,* Case No. A89–04692; *In re Devin Battlecreek, Ltd.,* Case No. A90–15443; *In re Devin Morrow Place, Ltd.,* Case No. A90–15442; *In re Devin Woodgate, Ltd.,* Case No. A90–15445; *In re Devin Deauville, Ltd.,* Case No. A90–15332; *In re Devin Stonehenge, Ltd.,* Case No. A90–15444. All of these cases were filed in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division.

quarter of a percentage point above debtor's amendment at confirmation. Likewise, it was 1.45% below the contract rate and 2.50% below the rate asserted by claimant as the required rate. It is reasonable to conclude that debtor's voluntary increase of the interest rate and the court's determination that a further increase was required for confirmation was due to the objections and efforts of claimant. The services of applicant, therefore, directly benefitted claimant by increasing the plan interest rate. The court finds and concludes that services in this regard were necessary to protect the interests of claimant.

■ 4. *Appeal Issues.* Debtor contends that time spent in considering whether to appeal the confirmation order should be disallowed as claimant did not appeal the confirmation order. The fact that over the life of the debtor's plan claimant would receive a lower interest return on its indebtedness warranted consideration by claimant of the prospects for appeal. As acknowledged by applicant, much of this time was expended in discussing with claimant the ramifications of the court's order on claimant's claim and rights. The court finds that some services in considering whether to appeal were appropriate to the protection of claimant's interests.

■ 5. *Fee Application Preparation.* Applicant expended 5.9 hours, billing $594, to determine whether to include "in-house" attorney's fees in the application. Such services do not appear necessary to protect claimant's interests and may not be charged to the debtor.

■ The application seeks compensation for 39.1 hours for fee application preparation. While time spent preparing a fee application is normally compensable, excessive time is not. *In re Nucorp Energy, Inc.,* 764 F.2d 655 (9th Cir.1985). The $104,625.34 size of this application does not justify 39.1 hours of preparation time. While applicant filed a ninety-three page application, three pages were resumes of applicant's professionals or paraprofessionals and seventy-four pages merely list the pre-recorded itemization of services and expenses. This was not a complicated or difficult application and fifteen hours should have been ample time to complete its preparation. The services rendered in preparing this application in excess of fifteen hours are not, therefore, commensurate with this fairly routine application.

■ Next, the court will consider whether the services rendered were reasonable. Even when legal services are necessary to protect an oversecured creditor's claim, the services must also be reasonable to obtain reimbursement from the debtor. *See Midland Mut. Life Ins. Co. v. Masnorth Corp. (In re Masnorth Corp.),* 36 B.R. 335, 338 (Bankr.N.D.Ga.1984) (citing to its earlier decision in the same case at 28 B.R. 892, 897). The court must, therefore, consider the amount of compensation and expenses requested under the reasonableness standard of § 506(b) and the standards of *Norman.*

■ *Hourly Rates.* Applicant's application is based upon hourly rates for the services rendered that range from $175 to $200 for partners; $90 to $140 for associates; and $65 to $75 for paraprofessionals. Based upon the rates charged, their blended hourly rate is $119.31. A detailed itemization of the daily time spent and the expenses incurred is attached to the application. The reasonableness of hourly rates charged has not been disputed. No additional evidence was presented by applicants in support of the hourly rates or by the objecting debtor in opposition. Based upon its own experience and expertise, the court finds that the hourly rates charged by the applicant attorneys and paraprofessionals are within the range of hourly rates charged for similar services by other attorneys and paraprofessionals in this legal community of comparable skill, experience and reputation. *Norman,* 836 F.2d at 1303.

*Reasonableness of Hours Expended and Expenses Incurred.* The necessity of the services performed generally determines what constitutes reasonably expended hours. In the present case, applicant seeks allowance of fees of $97,066.50 for 813.5

hours billed and reimbursement of expenses of $7,558.84.

The provisions of § 506(b) and the security documents of claimant were intended to make the oversecured creditor whole. Since neither the oversecured creditor nor counsel are under a duty to account to the debtor, a problem is created because the selector and user of the services is divorced from the payor of the services. This presents an untenable situation but for the statutory requirement that such services be reasonable and necessary to protect the creditor's interest. However legitimate the services, if they are not necessary to protect the creditor's interest, they should not be charged to the debtor, notwithstanding what contractual documents and state law may provide. *In re Centre Court Apts., Ltd.*, 85 B.R. 651, 660–61 (Bankr.N.D.Ga.1988); *Curtis v. Pilgrim Health and Life Ins. Co.*, (*In re Curtis*), 83 B.R. 853, 861 (Bankr.S.D.Ga. 1988). Although free to pursue any and all bona fide actions against the debtor, such creditor is not entitled to compensation for all possible legal activities that may be associated with the debtor and thereby impede the debtor's ability to reorganize. *Masnorth*, 36 B.R. at 339. The oversecured creditor is only entitled to payment of those services reasonably required to protect its interest in its loan.

The principal disputes of this case were claimant's objection to debtor's discovery of its national "troubled-loan" criteria, objection to debtor's proposed plan interest rate and objection to confirmation of debtor's plan. Although of some complexity, these issues did not warrant the amount of time and services spent by applicant. As an oversecured creditor, there has never been any serious contention that claimant's interests were not fully protected at all times.

The difficulty with this applicant's services as they relate to this debtor is that they are significantly disproportionate to the importance and significance of the issues in the case. For example, the discovery issue alone accounts for approximately one-half of the services. Yet, the application contains services relating to (1) the debtor, (2) the national policy objectives of claimant, and (3) defaulting entities related to the debtor. The greater portion of these services, therefore, appear to have been rendered pursuing claimant's objectives unrelated to this debtor. First, in defending this issue, claimant sought to further its national policy objectives relating to other potential defaulting nonrelated debtors. Secondly, it was defending against perceived benefits to debtor's principal and seven related entities.

Whether considering applicant's figures of $46,794.50 for 390.3 hours or the debtor's figures of $51,641.50 for 412.3 hours, the fees requested for the discovery issue are excessive. They simply cannot be justified by the economics of the case nor the significance of the issues to the protection of claimant's interests. Services of this magnitude could only result from redundancy through needless or over-staffing of legal work or pursuit of goals unrelated to this debtor. Based on this record and the court's own knowledge in administering this case, the involvement of twenty-four professionals or paraprofessionals appears to be unwarranted. The magnitude of the services only makes sense if viewed in relation to claimant's national policy objectives or defaulting related party matters.

This redundancy generally is present in each category of services of this application. While the debtor objects to specific categories of services, it is impossible to separately identify the time entries which relate only to debtor from those which relate to other interests of claimant. Here applicant seeks to charge debtor for all of the services while debtor objects and seeks total disallowance. The record lacks sufficient documentation or testimonial support to permit reasonable allocation of these services to the discrete matters that pertain to the debtor and those that do not.

As noted by the court in *Norman*, where the evidentiary record, affidavits, documentation or testimonial support are inadequate, the court is not relieved of its obligation to award a reasonable fee simply because the record is inadequate.

Rather, the court has the authority to make the award without further pleadings or evidentiary hearing. In such cases, the court may rely freely upon its own knowledge and experience in determining reasonable and proper fee awards. *Norman*, 836 F.2d at 1303; *Hensley* 461 U.S. at 433, 103 S.Ct. at 1939. Although the court should attempt where possible to identify specific hours that are excessive or redundant, when unable to do so due to the inadequacy of the record, the court may simply reduce an award by proportion. *Norman*, 836 F.2d at 1302. Such is the case before the court. Accordingly, the court concludes that it can only make a proportional adjustment of the fees based upon the court's own knowledge and experience and upon the nature and scope of this litigation. *Norman*, 836 F.2d at 1303.

■ Clearly, some portion of these services were both reasonable and necessary to debtor's case. The difficulty is that the greater portion of the services were either unnecessary or they related to other interests of claimant. While not dispositive, the charges of debtor's counsel provide at least some evidence of the scope of the litigation and the significance of the issues to the case. Debtor's counsel handled the debtor's entire Chapter 11 case for $32,906, or approximately one-third of the total $104,-624, requested by claimant's counsel. Likewise, debtor's counsel's services on the discovery issue totalled approximately $16,-000, or approximately one-third of that requested by claimant's counsel. Having carefully examined the itemization of applicant's services, the court finds them to be excessive and disproportionate to the importance and significance of the issues in this case. Based upon this record and its own knowledge and experience, the court finds and concludes that $30,000.00 is a reasonable allowance to applicant for those services chargeable to the debtor. The balance of the services are disallowed as excessive or because they relate to other interests of claimant which are not chargeable to this debtor.

■ The expenses for which applicant seeks reimbursement are likewise not divisible between those matters related to debtor and those related to claimant's other interests. Applicant has not correlated the expenses incurred to the discrete matters handled in this case. The court will, therefore, apportion the expenses on the same basis as the allowed fees. Accordingly, the court awards applicant $2,335.68 as reimbursement of expenses. The balance of expenses are disallowed as the portion reasonably allocated to claimant's interests which are unrelated to the debtor.

■ *Adjustments to the Lodestar.* As noted in *Norman*, certain adjustments, or "enhancements" to the lodestar are permitted in certain rare circumstances. The fact that the applicant expended an unreasonable number of hours may be offset somewhat by such adjustments, if applicable. Here the applicant achieved average results in an average case while charging an extraordinary amount of fees. The applicant does not contend that the results in the instant case were exceptional, nor that this was a contingency fee case. Under *Norman*, the sole modification or "enhancement" possibly available to this applicant is the prospect of a delay in the receipt of payment. The applicant has made no showing in this regard. Presumably, applicant has billed and been paid by claimant. This application seeks the allowance on behalf of claimant as an oversecured creditor. The court concludes, therefore, that no lodestar adjustment is appropriate.

In denying such attorney's fees and expenses the court in no way passes upon the services rendered as between the creditor and its counsel. A creditor is free to employ counsel to pursue whatever bona fide actions it may choose. However, such creditor and counsel are not free to saddle the debtor with the costs of all those services as part of a § 506(b) claim where they are not reasonably necessary to the protection of the creditor's interests.

For the foregoing reasons, applicant is awarded fees in the amount of $30,000.00

and expenses of $2,335.68. The balance of fees and expenses requested are disallowed.

IT IS SO ORDERED.