**In re DAVIDSON METALS, INC., Debtor and Debtor-in-Possession.**

**Bankruptcy No. 490–00754.**

United States Bankruptcy Court, N.D. Ohio.

March 22, 1993.

Michael J. Moran, Cuyahoga Falls, OH, James W. Slater, Akron, OH, for Davidson Metals, Inc.

Michael Axel, Society Nat. Bank, Cleveland, OH, John F. Kostelnik and Mary C. Kaczmarek, Cleveland, OH, for Society Nat. Bank, successor by merger to Ameritrust Co. Nat. Assoc.

M. Scott Michel, Cleveland, OH, U.S. Trustee.

## MEMORANDUM OPINION AND ORDER

WILLIAM T. BODOH, Bankruptcy Judge.

Before the Court are the First and Second Applications of Ameritrust Company, NA (nka Society National Bank) ("Society") for Allowance and Payment of § 506(b) Fees and Expenses. Objections to the Applications were filed by Debtor-in-Possession and Dollar Savings and Trust Company ("Dollar"), and the United States Trustee filed Comments urging disallowance of certain of the amounts requested. Hearings on the Applications were held before the Court at which time counsel representing Society and each of the above other parties appeared.

11 U.S.C. § 506(b) provides:

[t]o the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be al-

lowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

■ In evaluating applications for payments made under § 506(b), a court must first determine whether or not a fee applicant is oversecured. If that question is answered in the affirmative, the court then looks to the agreement from which the secured claim arose. The agreement's language authorizing the payment or reimbursement of expenses must be valid and enforceable under applicable law. *See*, 3 LAWRENCE P. KING, ET AL., COLLIER ON BANKRUPTCY, ¶ 506.05 (15th Ed.1992); *see also*, *In re Harper*, 146 B.R. 438, 443–44 (Bankr. N.D.Ind.1992). The specific payments requested must represent the services and expenses provided for in the agreement. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). The terms of the agreement are strictly construed in that regard. *In re Gwyn*, 150 B.R. 150, 155 (Bankr.M.D.N.C.1993); *In re Tashjian*, 72 B.R. 968, 976 (Bankr.E.D.Pa.1987). Finally, the fee and expense amounts awarded must be reasonable under the facts and circumstances of the case, and overreaching by a creditor will not be tolerated. *In re Harper*, 146 B.R. at 445; *In re Circle K Corp.*, 141 B.R. 688, 692 (Bankr.D.Ariz. 1992); *Chase Manhattan Bank v. Wonder Corp. of Am. (In re Wonder Corp. of Am.)*, 82 B.R. 186, 192 (D.Conn.1988). *See also*, 3 LAWRENCE P. KING ET AL., COLLIER ON BANKRUPTCY, ¶ 506.05 at 506–54 (15th Ed. 1992) (citing cases). The applicant has the burden of establishing reasonableness by way of detailed descriptions of the services rendered, and supporting documentation where appropriate. *In re Circle K Corp.*, 141 B.R. at 690; *In re Hart*, 80 B.R. 107, 111 (Bankr.E.D.Tenn.1987).

For all times relevant to this case, Society has been the primary secured lender to Debtor-in-Possession. Society's Applications seek recoupment of claimed legal fees and expenses incurred enforcing and protecting its rights as a secured creditor. Society cites several provisions of its financing agreements with Debtor-in-Possession (Society's Amended Exhibit A) as authorizing payment of those expenses.

Debtor-in-Possession filed an Objection to Ameritrust's First Application, concluding that "there was simply too much work performed to too little purpose and too great expense." The Objection claimed that the fees attributed to travel time and to preparation of the fee application were excessive. It further suggested that much of Society's research and litigation expense was not reasonably related to the protection of Society's lien rights.

The United States Trustee's Comments to the First Application echoed Debtor-in-Possession's concerns regarding the preparation of the fee application. The United States Trustee also asserted that many services and expenses were insufficiently described and documented, and that attorney fee charges for in-house counsel at $150.00 per hour were unreasonable. Finally, the Comments suggested that an award of § 506(b) fees could not be made until the then-pending Adversary Proceeding No. 90–0065, which involved a lien priority dispute between Society and Dollar, was resolved. An Objection filed by Dollar raised the same issue, claiming that without resolution of the adversary proceeding, the record was inconclusive as to whether Society was oversecured.

On November 18, 1991, this Court issued an order stating that it would not enter a final order on Society's First Application until the relative priority of Dollar and Society was determined. The adversary proceeding was subsequently decided in Society's favor, and there remains no dispute among the parties as to the fact that Society is and has been oversecured and is therefore eligible to seek reimbursement pursuant to § 506(b). No party in interest has contested the fact that the lending agreements between Debtor-in-Possession and Society provide for the reimbursement of certain costs incurred in connection with their security agreements and that Amended Exhibit A shows an accurate reproduction of the relevant terms. After Society's

Second Application was filed, however, the Office of the United States Trustee renewed its other grounds of opposition to the fee amounts requested.

The Court has reviewed the fee applications in detail, and considered the views of all parties in interest. I am satisfied that at all relevant times Society has been an oversecured creditor, and that its applications for expense reimbursement may properly be considered pursuant to § 506(b). There is no question raised as to the validity of the fee terms set forth in Amended Exhibit A, and the Court finds those terms to be enforceable against Debtor-in-Possession. The key inquiries to be made center on whether the reimbursements sought were provided for in the loan documents and are reasonable under the circumstances.

■ Society's First and Second Applications seek allowance of fees and expenses amounting to $183,832.88 that were amassed by the following entities: Newman, Olson & Kerr, for legal services ($1,037.50); Noll Machinery and Equipment, for equipment appraisals ($5,850.00); Wanous Reporting Service, for recording and transcription services ($434.00); Mr. Everett Knight, for receivables collection assistance ($2,000.00); Thompson, Hine & Flory, for legal services ($146,701.38); and Society's in-house counsel, also for legal services ($27,810.00). The first four of these, to which no specific objections were raised, can be dealt with in summary fashion. Newman, Olson & Kerr provided prepetition legal services in the lien priority dispute that would later become Adversary Proceeding No. 90–0065, mentioned above. The itemization of work performed indicates that those services were reasonably related to enforcing Society's security interest, and were of the type contemplated by both § 506(b) and the terms of Amended Exhibit A. Individual entries totaling 3.1 hours and $232.50 are disallowed as being non-descriptive, however, leaving an allowed total for services of $735.00. Furthermore, the Court's general guideline regarding outgoing facsimile transmission charges is that actual and itemized long distance telephone charges plus $2.00 per transmission or $1.00 per page, whichever is less, may be allowed. The Newman, Olson & Kerr statement shows facsimile charges assessed at $5.00 to $10.00 per transmission. The amount of Newman, Olson & Kerr expenses allowed is therefore reduced from the $70.00 sought to $56.00.

Noll Machinery and Equipment was engaged by Thompson, Hine & Flory to assist in Society's efforts to determine the value of its lien interests in various property held by Davidson Metals. These expenses were clearly the sort addressed by both § 506(b) and Amended Exhibit A. The Court is aware of the nature and extent of the property involved in that inquiry, and finds the appraisal fee total of $5,850.00 to be reasonable in a case of this scope.

Wanous Reporting Service was engaged by Thompson, Hine & Flory to record and transcribe depositions taken in the Dollar Savings and Trust adversary proceeding. Like the Newman, Olson & Kerr fees, the Court finds the costs attributable to Wanous in Adversary No. 90–0065 to be appropriate, and reasonable as to their amount. The $434.00 requested is allowed in its entirety.

Mr. Everett Knight was a professional collection agent retained by Society to assist in the collection of Davidson accounts receivable. Because the receivables clearly fall into the set of interests to be pursued by Society, the expenditure is appropriate and the $2,000.00 amount is reasonable under the circumstances.

■ The Thompson, Hine & Flory billings make up the overwhelming majority of entries in both the First and Second Applications of Society. Upon applying the analyses also employed above, the Court has reached certain determinations. The first pertains to fees claimed in connection with the preparation, review and defense of Society's First Application, and in the preparation and review of the Second Application. By the Court's tally, Thompson, Hine & Flory has billed a total of 103.2 hours, amounting to $9,200.00, for tasks related to its fee applications. Both totals appear to be grossly excessive, even given the scope

and duration of this Chapter 11 case. Even if that were not the case, however, this Court, like other courts of this District, typically finds that time expended in the fee application process is not compensable. Society has argued that because the applications are brought pursuant to 11 U.S.C. § 506(b) versus 11 U.S.C. §§ 327 et seq., the policy of disallowance should not apply. That argument is rejected. The $9,200.00 Thompson, Hine & Flory fee total incurred in connection with the preparation of the First and Second Applications is disallowed.

The Applications reflect Thompson, Hine & Flory hourly fee rates of $155.00 to $240.00 for partners, $120.00 to $170.00 for senior-level attorneys, $85.00 to $120.00 for associates, $75.00 for a summer associate, and $60.00 to $65.00 for paralegals. It appears that these rates are generally within the same price range as similar services charged by comparable large law firms in cases of this type. The Court is troubled, however, by the sheer amount of time billed. Excluding the aforementioned time spent in fee statement preparation, Thompson, Hine & Flory seeks compensation for 811.7 hours, totalling $129,622.50.

 A thorough review of the corresponding descriptive entries within the two Applications reveals that many entries represent work that is clearly allowable under § 506(b) and Amended Exhibit A. However, equally many entries fail, for one of several reasons. A number of the descriptions are impermissibly vague, which gives the Court no basis on which to conclude that the corresponding services were reasonable. *In re Riker Indus., Inc.,* 122 B.R. 964, 971 (Bankr.N.D.Ohio 1990). Primary among these are notations of telephone calls and conferences where the participants are listed but the conversation topic is not. Time charges for attendance at Court hearings do not disclose what amounts, if any, are attributed solely to travel. Several entries disclose what appear to be clerical functions (e.g., work on a service list, filing of Court documents, etc.) performed by counsel. The latter items are more properly considered to be overhead of a law firm, and are not com-

pensable at the rates billed. A number of billed matters clearly fall outside the scope of both § 506(b) and Amended Exhibit A. These include, *inter alia,* research as to the circumstances under which a debtor may file a lender liability suit, engagement of an outside investment banker, discussions with counsel for a principal of debtor-in-possession, attention to debtor-in-possession's procurement of an outside letter of credit, and preparation of objections to an extension of the exclusivity period. It is well settled that an oversecured creditor may not use § 506(b) to gain compensation for every action it might choose to take throughout the duration of a debtor's bankruptcy case. *In re Huhn,* 145 B.R. 872, 877 (W.D.Mich.1992), *In re Riker Indus., Inc.,* 122 B.R. at 973. Because of ambiguity in many of the individual entries, however, it is impossible to precisely ascertain which charges are directly related to the protection of Society's lien interests.

Compounding that problem is the overwhelming number of Thompson, Hine & Flory entries attributable to intra-firm status conferences, telephone discussions, progress reports, and strategy meetings. Billings for 21 separate Thompson, Hine & Flory professionals appear in the two Applications. While Society is free to utilize whatever size cadre of lawyers it prefers, the costs attributable to "overlawyering" should be borne by the creditor rather than by Debtor-in-Possession. *In re Gillette Assocs., Ltd.,* 101 B.R. 866, 880 (Bankr. N.D.Ohio 1989), *Clark Screw Mach. Prods. Co. v. Clark Grind & Polish, Inc. (In re Clark Grind & Polish, Inc.),* 137 B.R. 172, 175–76 (Bankr.W.D.Pa.1992). The number of billed conferences between Thompson, Hine & Flory professionals and representatives of Society likewise exceeds a level that this Court would find appropriate. From the information provided, the Court concludes that many of these conferences and meetings were of no value in protecting the lien rights of Society and represent unreasonable charges for § 506(b) purposes.

 However, the impossibility of readily divining *which* entries, or, in some

examples, which portions of an entry, are truly related to protection of Society's lien interests rules out a line-by-line fee allowance. In such a case, a court must rely on its own knowledge and experience in arriving at a proper fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 433–34, 103 S.Ct. 1933, 1939–40, 76 L.Ed.2d 40 (1983); *Norman v. Housing Auth. of the City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir.1988). Courts thus often reach a final dollar figure via a proportional adjustment to the total of fees requested. *See, e.g., In re Villa Capri of Ga. Assocs., Ltd.*, 141 B.R. 257, 264 (Bankr.N.D.Ga.1992) (approximately 70% of fee disallowed); *In re Wire Cloth Prods., Inc.*, 130 B.R. 798, 813–16 (Bankr.N.D.Ill.1991) (percentages vary; aggregate 50% disallowed); *In re Courtland Estates Corp.*, 144 B.R. 5, 11 (Bankr. D.Mass.1992) (15% reduction appropriate). In assessing the complexity and scope of the issues presented in this case, the fee charges for counsel for Debtor-in-Possession, though not dispositive, are helpful. The fee total, exclusive of expenses, requested by two separate law firms for representation of Davidson Metals during the time period considered here equals barely half of the amount billed by Thompson, Hine & Flory, even excluding $18,071.50 in fees billed with regard to the Society/Dollar adversary proceeding. The Court's experience in similar cases and its examination of the record before it lead to the conclusion that the Thompson, Hine & Flory charges are excessive given the issues involved, and unreasonable in exceeding the parameters of § 506(b). The Court finds a fee reduction of 30% appropriate. Applying that percentage to the $129,-622.50 not attributable to the preparation of fee applications yields an allowable total for Thompson, Hine & Flory professional services under § 506(b) of $90,735.75.

■ Society also seeks $7,878.88 for reimbursement of expenses incurred by Thompson, Hine & Flory. At a hearing to consider the Second Application, Thompson, Hine & Flory conceded that a $320.15 charge for LEXIS online research probably included a 50% surcharge. An amount equal to that surcharge, $108.00, is there-fore disallowed. In addition, charges are assessed for 159 outgoing fax transmissions totaling $1,277.15, representing an average price of over $8.00 per transmission. Individual charges range from a low of 35¢ to a high of $43.85. The entries do not include itemizations of actual telephone company charges on those faxes sent to out-of-town recipients. Hence, applying the guidelines utilized above in considering the Newman, Olson & Kerr expenses, even if all other allowability criteria were met, the Court would allow no more than $318.00 in reimbursement.

Many fax itemizations, like many fee entries, lack necessary descriptiveness. Indeed, many entries do not identify the recipient of the transmission, let alone its purpose. While the Court acknowledges the importance of the fax machine in conducting time-sensitive tasks, not one of the 159 entries here alleges a need for delivery more prompt than first class mail service. The same may be said of entries listing literally dozens of items sent via overnight mail or outside messenger service at a total claimed expense of $848.00.

Thompson, Hine & Flory's statements also include a request for photocopy reimbursement of $2,814.70, reflecting an average cost of 15¢ to 20¢ per page. While that rate is generally acceptable for individual copies, copying in bulk [e.g., 710 pages copied 12/06/91] is typically allowed only at lower rates available from commercial copy services.

The conclusion to be drawn after consideration of all claimed expenses is that they too represent "overlawyering" on the part of Thompson, Hine & Flory. As in the case of the firm's corresponding professional fees, it is impossible to pinpoint which out-of-pocket expenses are reasonable in amount and attributable to the exercising of Society's rights under Amended Exhibit A, and therefore allowable per § 506(b). It is appropriate to allow the expenses in the same ratio as the Thompson, Hine & Flory fees. *Villa Capri*, 141 B.R. at 264. Adding the maximum fax reimbursement of $318.00 to the remaining LEXIS/WEST-LAW, photocopying, delivery, and other ex-

penses yields a sum of $6,811.73 which when reduced by 30% equals an allowable $4,768.21. The grand total of Thompson, Hine & Flory fees and expenses allowed is $95,503.96.

Finally, Society seeks to bill Debtor-in-Possession for $27,810.00 in fee charges assessed by the Bank's in-house counsel. These fees are attributed to 185.4 hours of time spent by two separate attorneys, each of whose work is billed at $150.00 per hour. The Court notes at the outset that 18.1 of those hours were expended in connection with the preparation and defense of the First and Second Fee Applications, and that therefore at least $2,715.00 is disallowed for reasons already set forth in this opinion.

The Court does not question the experience and skill level of Society's in-house counsel. At a hearing on Society's First Application, however, the Court questioned the origin of the $150.00 per hour billing rate. Counsel for Society indicated that the $150.00 represented a blended rate, arrived at by estimating the market rates of the approximately 30 in-house attorneys, and averaging those rates. She was unwilling to state, however, that any, let alone the median, Society in-house attorney received a yearly compensation package consisting of salary, bonus, overtime, fringe benefits and an allocated share of overhead equal to $312,000.00 ($150.00 × 2,080 hours worked per year). The Court takes that to mean that the $150.00 includes a substantial profit component. Society has maintained that the use of in-house counsel has reduced the amount of outside legal costs in this case. Given the fact that the in-house hourly rate is higher than that charged by all but the most senior Thompson, Hine & Flory professionals, the Court is not convinced that there has been a cost savings. Further doubt is cast upon the reasonableness of the rate when one considers that the same individual who billed $150.00 per hour in-house between January and March of 1990 billed at a rate of $120.00 per hour at Thompson, Hine & Flory one year later.

In evaluating whether the in-house fee amounts are justified under § 506 and Amended Exhibit A, and are reasonable as to amount, the Court has many of the same concerns it had with the Thompson, Hine & Flory fees. It appears that certain billed items were unrelated to protecting Society's lien interests as required by § 506(b) (e.g., two hours ascertaining where the Davidson bankruptcy case may be filed). In-house counsel appeared at, and billed for, appearances at many hearings before the Court where Thompson, Hine & Flory personnel was also present, with no showing that multiple representation was needed. This same sort of duplication of effort appears intermittently throughout the many conference and meeting entries in the First and Second Applications. While in-house counsel spent substantial time preparing research and correspondence independent of Thompson, Hine & Flory, many entries are devoted to the review and approval of Thompson, Hine & Flory work product. The Court finds that counsel's role in those matters was that of client, rather than advocate. For many of the reasons set forth above in dealing with the Thompson, Hine & Flory fees, the Court would perhaps consider allowing the Society in-house fees at a reduced percentage in an attempt to allow only those § 506(b) fees that are reasonable in amount.

Such an allowance would not meet the remaining requirement of the § 506(b) process, however—the requirement that all fees allowed to an oversecured creditor be specifically provided for in the agreement between the Debtor and the creditor. Amended Exhibit A, as reflective of the security agreements between Society and Davidson Metals, provides that Society is entitled to recoup "all court costs and attorneys' fees and every other cost, expense or liability, if any, incurred or paid by [Society] in connection with [the security agreements] ...", and further states that Davidson Metals "shall ... defend, indemnify and save [Society] harmless from and against every out-of-pocket cost, expense, loss or liability (as the case may be), if any, incurred by [Society] by reason of this Security Agreement...." The Court fails to

see how the cost of employing in-house counsel is directly attributable to Davidson Metals' security agreements. Looking at it another way, nothing in the loan documents requires Davidson Metals to assume responsibility for paying any portion of Society's pre-existing overhead costs, namely, the continuing salary, benefits, etc. of its employees. Whatever obligation exists to compensate in-house attorneys remains with Society. Society has cited no persuasive statutory or case law authority for their proposed policy that would, in effect, make in-house legal departments profit generating centers. The allowance of all attorney fees corresponding to charges of in-house counsel for Society is thus denied.

In conclusion, the fees and expenses for which Society may claim reimbursement from Davidson Metals as part of its secured claim, pursuant to 11 U.S.C. § 506(b), are summarized as follows:

| | |
|---|---|
| Newman, Olson & Kerr | $ 791.00 |
| Noll Machinery and Equipment | $ 5,850.00 |
| Wanous Reporting Service | $ 434.00 |
| Everett Knight | $ 2,000.00 |
| Thompson, Hine & Flory | $ 95,503.96 |
| Total | $104,578.96. |

The Court passes no judgment as to the validity of any fee amounts as between Society and these five service providers, such issues being outside the scope of the matters raised here.

**IT IS SO ORDERED.**