**In re Nate M. OLIVER, Debtor.**

**CITICORP SAVINGS OF FLORIDA, A FEDERAL SAVINGS AND LOAN ASSOCIATION, Movant,**

**v.**

**Nate M. OLIVER, Respondent.**

**Bankruptcy No. 93–10461.**
**Motion No. DAB–5.**

United States Bankruptcy Court,
W.D. Pennsylvania.

June 20, 1995.

---

Stephen H. Hutzelman, Erie, PA, for debtor.

D. Alexander Barnes, Malvern, PA, for Citicorp Sav. of Florida.

## OPINION

WARREN W. BENTZ, Chief Judge.

### Factual Background

Nate M. Oliver ("Debtor") filed a voluntary Petition under Chapter 11 of the Bankruptcy Code on June 21, 1993. Citicorp Savings of Florida, a Federal Savings and Loan Association ("Citicorp") holds a second mortgage ("Mortgage") on a condominium owned by the Debtor which is located in Fort Myers, Florida (the "Property"). On or about April 26, 1994, Debtor's Amended Plan of Reorganization was confirmed ("Confirmed Plan"). The Confirmed Plan provides that Citicorp's Mortgage shall be brought contractually current.

On or about June 30, 1994, Debtor filed a Motion for Authority to Pay the Secured Claim of Citicorp. Debtor sought authority to pay Citicorp $43,382.45 in full satisfaction of the Mortgage. In response, Citicorp asserted that it was entitled to distribution of the total contractual amount due under the Mortgage, which included principal of $43,382.45, interest of $15,587.50, and attorney's fees of $9,078.81, or a total of $68,048.76.

On or about September 28, 1994, the Debtor was authorized to pay Citicorp $43,382.45, without prejudice. On October 7, 1994, Citicorp filed a MOTION FOR REHEARING, RECONSIDERATION AND/OR MOTION FOR CLARIFICATION OF ORDER. Citicorp claimed that as of June 1, 1994, the contractual amount due was $68,537.43 which was comprised of principal of $43,880.62, prepetition interest of $11,237.50, postpetition interest of $4,350.00, attorney's fees of $8,340.31, and expenses of $729.00.

We subsequently determined that Citicorp was entitled to interest in the amount of $16,856.25 and authorized the Debtor to make payment.

Presently before the Court is Citicorp's FEE APPLICATION AND MOTION OF CITICORP SAVINGS OF FLORIDA FOR PAYMENT OF CONTRACTUAL COSTS DUE UNDER MORTGAGE ("Motion").

Citicorp asserts that it is entitled to an additional payment of $25,041.12, comprised of attorney's fees of $12,582.69, expenses of $729.00, and reimbursement for advances it made to the first mortgagee in the amount of $11,729.43. Although Citicorp made payments to the first mortgagee in September, 1992, and January, 1993, it first made a claim for this amount in the present Motion. Citicorp asserts that the requested amounts are authorized under its note and Mortgage (collectively, the "Loan Documentation"); that payment is required pursuant to the terms of the Confirmed Plan; or, in the alternative, that payment is required under 11 U.S.C. § 506(b).

The Debtor does not dispute that the Loan Documentation entitles Citicorp to reimbursement of the charges requested, provided that the charges are reasonable. The Debtor disputes the reasonableness of the charges. The Debtor further asserts that allowance of the requested amounts must be determined under § 506(b) and that the language in the Confirmed Plan which provides that Citicorp's account would be brought contractually current is not applicable because at the time of confirmation, the Debtor "had no knowledge that over $11,000 in advances to another party had been incurred by Citicorp nor that reasonable attorney's fees could [be] contemplate[d] [in] amounts anywhere near that being sought."

The Debtor asserts that under § 506(b), Citicorp's total recovery is limited to the value of the Property which secured its claim as of the date of the bankruptcy filing less prior payments to creditors with priority ahead of the Mortgage. As of March 29, 1995, the Debtor believed that value of the Property as of the filing date was $100,000. The Debtor has subsequently alleged that the correct value is between $85,000 and $90,000. The Debtor asserts that it has made payment on claims with priority ahead of Citicorp totalling $95,300.54 and thus the Debtor asserts that Citicorp is not entitled to payment of any of its costs.

Citicorp asserts that the value of the Property is at least $100,000; that its Mortgage takes priority over the Condominium Association dues; that Citicorp is secured to an amount at least equal to $70,563.16 ($100,000 value − $29,436.84 first mortgage); that Citicorp has been paid $60,238.70 ($43,382.45 principal and $16,856.25 interest); and that there remains at least $10,324.46 ($70,563.16 − 60,238.70) in equity to satisfy Citicorp's claim for costs and fees under § 506(b).

### Issues

1. Whether Citicorp is entitled to have its claim brought contractually current under the terms of the Confirmed Plan or whether Citicorp's claim must be determined under § 506(b).

2. What is the reasonable amount of Citicorp's fees and expenses.

3. Whether an evidentiary hearing is required to determine the value of the Property.

4. Whether the Condominium Association dues have priority over Citicorp's mortgage.

### I. Determination of Fees, Expenses under Confirmed Plan or under § 506(b)

■ Debtor's statement in the Confirmed Plan which provides that Citicorp's Mortgage would be brought contractually current entitled Citicorp to believe that its claims would be paid. The provision did not, however, waive the Debtor's rights to seek an evaluation of the extent to which Citicorp's claim was secured or an evaluation of the reasonableness of the fees and costs which Citicorp requests. *See In re Lewis,* 875 F.2d 53 (3d Cir.1989) (11 U.S.C. § 506 can be invoked after confirmation of a Chapter 13 Plan); *In re Dembo,* 126 B.R. 195, 199 (Bankr.E.D.Pa. 1991) (a § 506 complaint may be filed at any time before a case is closed). *See also Cooper v. Mellon Financial Services Corp.,* 1991 WL 279440 (ED La.1991) (bankruptcy court properly determined secured creditor's reasonable attorney's fees following confirmation of Chapter 11 Plan). *See also In re Gwyn,* 150 B.R. 150 (Bankr.M.D.N.C.1993).

Accordingly, we conclude that the allowed amount of Citicorp's fees and expenses must be determined under § 506(b).

*II. Amount of Reasonable
Fees, Costs or Charges*

■ The starting point for our analysis is § 506(b) which provides:

(b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

11 U.S.C. § 506(b).

Citicorp seeks reimbursement of a total of $25,041.12 for attorney's fees, expenses, and for payments it made to the first mortgagee.

The amount sought for expenses, $729.00, is minimal and covers the cost of two appraisals completed on Citicorp's behalf. We find that the requested expenses are reasonable.

■ Citicorp seeks reimbursement of $11,729.43 which it paid to the first mortgage holder. The Mortgage expressly authorizes Citicorp to make such payments. Citicorp has provided a copy of a canceled check reflecting payment of $10,387.28 to the first mortgagee and an Affidavit from a Citicorp employee as to an additional payment in the amount of $1,342.05. The Debtor has not denied that such payments were made. We find that such payments are reimbursable.

■ The amount of the request for attorney's fees is more troublesome. The amount requested has varied throughout this proceeding. The present request is for $12,582.69.

Citicorp originally engaged the law firm of Fried and Fishman in 1992 at about the time the Debtor filed one of his prior bankruptcies in Florida. Fried and Fishman pursued a motion for relief from the automatic stay in the Florida bankruptcy and then proceeded with a foreclosure action which apparently was stayed upon the filing of the present bankruptcy. Fried and Fishman charged Citicorp $1,906.35 for their efforts which apparently ceased in December, 1993. Included in Fried and Fishman's billings are expenses for filing fees, advertising costs, and other charges which total approximately $900. The actual attorney's fee charged by Fried and Fishman is approximately $1,000. We find that such amounts are reasonable.

■ In January, 1994, Citicorp engaged Becket & Watkins as "local counsel" in Pennsylvania. Although referred to as "local counsel," Becket & Watkins is located in Malvern, Pennsylvania, a long distance from Erie. Becket & Watkins' time records reflect numerous entries which indicate that they are not "local" in nature, which include a motion to appear pro hac vice, entries for review of the Local Rules, and calls to the Clerk to determine hearing dates for motions (which are published regularly in the local legal journal). It makes little sense for an out of state firm to hire as local counsel another firm far removed from this area and who is not familiar with the local practices.

Becket & Watkins pursued a Motion for Relief from Stay, was involved in objections to confirmation, filed objections to the Debtor's Motion for Authority to Pay Claim, and filed a Motion for Rehearing, Reconsideration and Clarification. Its itemized billings reflect numerous entries where time spent on multiple activities is "lumped" into one entry.

■ A creditor is free to employ counsel it chooses to pursue bona fide actions against a debtor. However, the creditor may only charge the debtor with the costs of those services reasonably necessary to protect its interests. *In re Villa Capri of Georgia Associates, Ltd. Partnership,* 141 B.R. 257 (Bankr.N.D.Ga.1992). When the nature of time entries or individual portions of the time entries make it impossible to determine which items were reasonably necessary for the protection of the creditor's interests, the Court must rely on its own knowledge and experience in arriving at the proper fee award. *Id., In re Davidson Metals, Inc.,* 152 B.R. 917 (Bankr.N.D.Ohio 1993).

Citicorp requests reimbursement for fees and expenses of Becket & Watkins in the amount of $7,657.76. We find that $3,300 represents reasonable compensation and reimbursement of expenses for services rendered by Becket & Watkins.

■ After the departure of Fried and Fishman in December, 1993, Citicorp engaged the Miami, Florida firm of Blackwell & Walker as "general counsel" in the case. Blackwell & Walker's time entries commenced on March 15, 1994. Citicorp seeks reimbursement for Blackwell & Walker's fees in the amount of $2,227.16. Blackwell & Walker's services consist almost entirely of conferences and correspondence with Pennsylvania counsel, and the review of Pennsylvania counsel's work. We find such activities unnecessary and unreasonable.

■ The remaining fee request of $725.42 is for various amounts ranging from $12 to $240 with dates beginning in 1988. Although Citicorp asserts that these amounts are for attorney's fees, a review of the documentation indicates that they are actually for appraisals, property searches, and demand letters. Citicorp had appraisals of the Property done in May, 1988, October, 1990, September, 1992, and March, 1994. We have already indicated that we will allow the $795 for expenses as requested. We will disallow this additional amount requested for "attorney's fees" as not reasonable or necessary.

■ In conclusion, we find that Citicorp is entitled to reimbursement for attorney's fees, expenses, costs and charges in the total amount of $17,664.78, provided that the Property has a value which will support such an allowance.

### III. Evidentiary Hearing to Determine Value

■ § 506(b) permits a secured creditor to recover reasonable fees, costs, or charges provided for under the agreement under which such claim arose up to the point where the aggregate claim equals the value of the security. *In re Foertsch,* 167 B.R. 555 (Bankr.D.N.D.1994). The creditor carries the burden of proof of showing that it is oversecured. *Id.* We have determined that Citicorp has expended reasonable fees, and other costs in the amount of $17,664.78. The remaining issue is whether the value of the Property supports payment of that amount.

■ The Debtor would have us make the calculation as follows and have us find that there is no value to support Citicorp's claim:

| | |
|---|---|
| Value of property | $ 85,000.00 |
| Less: first mortgage | (29,436.84) |
| prior principal to Citicorp | (43,382.45) |
| prior interest to Citicorp | (16,856.25) |
| condo fees | ( 5,625.00) |
| Balance available for Citicorp's fees and costs | $(10,300.54) |

The Debtor acknowledges that some further adjustment must be made for postpetition interest and for postpetition condominium association fees which were paid.

Citicorp would have us make the calculation as follows:

| | |
|---|---|
| Value of property, at least | $ 100,000.00 |
| Less: first mortgage | ( 29,436.84) |
| prior principal to Citicorp | ( 43,382.45) |
| prior interest to Citicorp | ( 16,856.25) |
| Balance available for Citicorp's fees and costs, at least | $ 10,324.46 |

The disputed value of the Property is a material factual question. The parties will be directed to exchange appraisals and an evidentiary hearing will be scheduled.

### IV. Whether the Condominium Associates dues have priority over Citicorp's Mortgage

■ Florida law would apply to any lien priority for association dues owed on the Property. We are unable to determine on the present record how Florida law affects the parties here. *See* § 718.116 Fla.Stat. We will direct the parties to file briefs in support of their respective positions on this issue and if there are issues of fact, they will be heard at the evidentiary hearing to be scheduled.

### ORDER

This 20 day of June, 1995, in accordance with the accompanying Opinion, it shall be, and hereby is, ORDERED as follows:

1. The amount of $17,664.78 is the reasonable amount of contractual costs and fees incurred by Citicorp under its Note and Mortgage, subject to a future finding that its collateral has sufficient value to require payment by the Debtor.

2. Citicorp shall file a brief on the issue of priority between its mortgage and the condominium association dues within 20 days of the date of this Order.

3. Debtor shall file a responsive brief 10 days later.

4. Discovery is open.

5. An evidentiary hearing to consider the value of the Debtor's condominium and any factual issues regarding lien priority is fixed for September 6, 1995 at 1:30 p.m. in Courtroom C, U.S. Courthouse, Erie, Pennsylvania. One-half day has been reserved on the Court's calendar.

6. The parties shall exchange appraisals and file copies with the Court at least 20 days prior to the hearing.

7. This Order is interlocutory and not subject to appeal pending final resolution of the within matter.