## In re DIGITAL PRODUCTS CORPORATION, Debtor.

### Bankruptcy No. 97–21987–BKC–RBR.

United States Bankruptcy Court,
S.D. Florida,
Broward Division.

Sept. 11, 1997.

---

Robert C. Furr, Furr and Cohen, P.A., Boca Raton, FL, for Debtor.

Patricia A. Redmond, Stearns, Weaver, Miller, Weissler, Alhadeff & Sitterson, P.A., Miami, FL, for Tracking Systems Corporation.

### *ORDER GRANTING IN PART, AND DE-NYING IN PART, MOTION OF TRACKING SYSTEMS CORPORA-TION FOR PAYMENT OF FEES, COSTS AND CHARGES PURSUANT TO BANKRUPTCY CODE SECTION 506(b)*

RAYMOND B. RAY, Bankruptcy Judge.

THIS CAUSE came on to be heard for hearing on Tuesday, August 13, 1997, on the Motion of Tracking Systems Corporation for Payment of Fees, Costs and Charges Pursuant to Bankruptcy Code Section 506(b), and upon two supplements to the motion. Digital Products Corporation ("Debtor"), filed objections to the motions. At the hearing, the Court took testimony, considered the fee applications, the objections, and the Court file. After considering all of the above, the Court grants the motion in part, and denies it in part, as follows:

### Preliminary Matters

1. This Chapter 11 proceeding was filed on April 3, 1997. The Debtor was in immediate need of operating funds and Tracking Systems Corporation ("Tracking Systems") agreed to make a post-petition loan (the "Loan"). The Loan was approved by the Court at the recommendation of the Debtor and the Creditors' Committee.

2. The value of the collateral securing Tracking Systems' first lien on the personal property of Digital Products Corporation is scheduled in the Schedule of Assets and Liabilities to be $1,453,618 .00. The parties stipulated that Tracking Systems was oversecured. The principal amount of Tracking Systems' Loan was $250,000.00, plus interest at $125.00 per day.

3. Thereafter, the Debtor obtained new financing and on May 5, 1997, this Court entered an Order known as the Financing Order. This order provided that the first lien of Tracking Systems would be transferred to an escrow account in the amount of $330,500.00 pending an evidentiary hearing before the Court to determine the amount of attorneys' fees and costs to be awarded.

4. At the scheduled evidentiary hearing, the President of Tracking Systems conceded that his company was over-secured. However, Tracking Systems argued that they were very worried about the Debtor's financial position and that was the basis for the substantial attorneys' fees and costs. He further admitted that his company had been interested in acquiring the Debtor as early as December, 1996. The Tracking Systems Loan was apparently part of that process. It was a transaction in which Tracking Systems could not lose. The Loan would be repaid with interest and Tracking Systems could still pursue its interest in the Debtor. If the Debtor failed to repay the Loan, Tracking Systems could foreclose against the Debtor's assets, thereby obtaining the Debtor's assets through foreclosure and without any obligation to fund a plan or pay anything to creditors. Notwithstanding the repayment, Tracking Systems' President also admitted that his company was still interested in the Debtor and had recently purchased a substantial part of the secured claim that KBS, Incorporated had against the Debtor. KBS has a $500,000.00 secured lien on the Debtor's assets. Tracking Systems purchased $300,000.00 of that lien for $300,000.00.

5. Gregg Miller, Esq., of Pepper, Hamilton & Scheetz, LLP ("Pepper, Hamilton"), co-counsel to Tracking Systems, testified he knew that his client had a valid and perfected security interest for $250,000.00 when he became engaged in March, 1996, to handle this matter.

6. From the date of the filing of the Chapter 11 until the date the original Motion for Payment of Fees was filed on May 21, 1997, Tracking Systems filed twenty-eight (28) pleadings in this case. Twelve (12) were subpoenas, eleven (11) were notices of hearing, certificates of service, and notices of appearance; four (4) were substantive motions and one was a Stipulation.

### Attorneys Fees and Costs For Pepper, Hamilton & Scheetz, LLP

7. Pepper, Hamilton's Application seeks a total fee of $49,407.55 .[1] All of the work was performed out of its Philadelphia office. Two partners and one associate worked on the file along with several paralegals. The associate, David Fournier, did all of his work pre-petition and spent 9.75 hours on cash collateral issues. Lisa Jacobs, a partner, spent 13 hours on cash collateral issues. Most of the balance of her work of 6.25 hours is spent pre-petition on sending out default notices. In addition, she had a number of hours for internal conferences with her law firm. Gregg Miller, who testified, spent approximately 52 hours on cash collateral issues at $300.00 per hour. The total spent by David Fournier, Lisa Jacobs, and Gregg Miller was approximately $20,000.00 in fees for cash collateral issues. In addition to that, Mr. Miller traveled to Florida to attend de-

1. At the hearing on August 12, 1997, prior to the Court hearing argument and taking evidence, Tracking Systems voluntarily reduced its collective requests for fees, costs and charges pursuant to 11 U .S.C. § 506(b) by $10,000.00, allocable equally to the fee requests of Pepper, Hamilton and Sterns Weaver Miller Weissler Alhadeff & Sitterson, P.A., that being a $5,000.00 reduction for each law firm.

positions and hearings in the case and charged portal to portal travel for every trip. He testified that he worked on some of the trips, but he also conceded that he charged portal to portal when not working.

8. The costs sought for reimbursement by Pepper, Hamilton were not itemized in accordance with the fee guidelines for the Southern District of Florida. According to the first supplement for Pepper, Hamilton, $7,237.00 had been charged to the Debtor for airfare, $5,688.00 for hotel charges, $2,184.00 for car rental, and $1,076.00 for meals. Counsel and Tracking Systems officers stayed at the Marriott Hotel and other fine hotels in the South Florida area and seemed to avail themselves of dinner at various prominent restaurants in the area. All of the foregoing they seek to charge to the Debtor as part of protecting their lien.

### Fees and Costs of Stearns Weaver Miller Weissler, Alhadeff & Sitterson, P.A.

9. Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A. ("Stearns Weaver") and particularly Patricia Redmond, Esq. were lead and local counsel throughout the case for Tracking Systems. Stearns Weaver request reimbursement of fees of $29,136.00 and costs of $8,216.08. It is apparent through looking at the Stearns Weaver time records that most of the work that was done by Stearns Weaver was matched by Pepper, Hamilton in one way or another. However, the Court notes that Pepper, Hamilton spent more time on the same project than Stearns Weaver. The Stearns Weaver time records reflect a great deal of time spent revising and reviewing the very documents prepared and billed for by Pepper, Hamilton.

10. Stearns Weaver seeks reimbursement of costs in the amount of $1,213.00 for telephone charges, without any breakdown, $668.75 for transcripts, again, with no statement as to the need for those transcripts, and copy charges without compliance with the Local Rules on fee applications.

### Expenses of Tracking Systems Corporation

11. Tracking Systems seeks reimbursement of certain expenses totaling $12,545.00 for a number of trips to Florida for various matters in this case. The Application is broken down in great detail. It shows that John Sciortino, Kevin Craig, and Gregg Miller made numerous trips to Florida. The first trip occurred on April 16, 1997, and is billed for three days, despite the fact that the bankruptcy hearing was on the second day. The second trip was on April 28th and 29th, 1997, which was a meeting where counsel, Mr. Miller and Mr. Sciortino flew down to meet with the "responsible person," Soneet R. Kapila, and with their counsel. Mr. Miller evidently flew down on April 21, 1997, joined by Mr. Craig and Mr. Sciortino on April 28, 1997. Mr. Miller had a round trip ticket purchased on April 21, 1997, but apparently went back on a one-way flight on April 29, 1997, for an additional $279.30. The third trip was made by Mr. Sciortino on May 8, 1997. Mr. Sciortino flew down for a hearing to enforce a Settlement Agreement regarding the cash collateral. This is the Settlement Agreement which provided for the escrow and payment of the money owed to Mr. Sciortino's company. He spent three nights at the Marriott Hotel for $1,120.16 and enjoyed several dinners at local popular restaurants. The next trip was on May 16, 1997, to Fort Lauderdale for the final hearing and status report. Mr. Sciortino attending this hearing and stayed two nights and had dinner at expensive and prominent restaurants.

12. Mr. Sciortino attended the 341 meeting on May 21, 1997. Included in that expense was $300.00 for a trip from Harrisburg, Pennsylvania to the Philadelphia airport and back in a limousine.

13. Mr. Sciortino attended the post-petition financing hearing whereby Tracking Systems was to be repaid its post petition loan. That trip cost $907.22, which included dinner at an expensive restaurant, one night at the Marriott Hotel, and the attendant expenses thereto. The final trip was for June 17, 1997 through June 20, 1997, which was the hearing on 506(b) Fees as originally scheduled.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

The fees sought by Tracking Systems are pursuant to its Promissory Note

and Security Agreement. However, pursuant to Bankruptcy Code 506(b), a secured creditor is allowed only reasonable attorneys fees and expenses in enforcing its rights. In making a fee determination, the Court must consider not only the fee agreement but the overall fairness and reasonableness of the fee under all of the circumstances. Reasonable fees are those necessary to the collection and protection of a creditor's claim and include fees for those actions which a similarly situated creditor might have taken. The fees must be cost justified by the economics of the situation and necessary to preserve the creditor's interest in light of the legal issues involved. A secured creditor is not entitled to compensation for its attorneys fees for every action it takes by claiming that its rights have been effected. *In re Huhn*, 145 B.R. 872, 876 (W.D.Mich.1992).

▪ One purpose of Section 506(b)
is to ensure that estate assets are not squandered by over-secured creditors, who, believing that the debtor will be required to foot the bills, fail to exercise restraint in the attorneys' fees and expenses they incur, perhaps exhibiting excessive caution, overzealous advocacy and hyperactive legal efforts.

*In re Gwyn*, 150 B.R. 150 at 155, (Bankr. M.D.N.C.1993).

▪ In examining a large fee application submitted by an over-secured creditor, "a court must rely on its own knowledge and experience in arriving at a proper fee award." *In re Davidson Metals, Inc.*, 152 B.R. 917 (Bankr.N.D.Ohio 1993), *aff'd*, 65 F.3d 168 (6th Cir.1995). In that case, the Court found the fees sought by the over-secured creditor to be excessive when they were double those of debtor's counsel.

▪ The Court notes that Furr and Cohen, P.A., counsel for the Debtor, filed a Interim Fee Application in the amount of $48,744.00 for fees from the beginning of the case through July 25, 1997. This fee application not only covers all of the dealings with Tracking Systems, but all other aspects of this substantial Chapter 11 proceeding. This fee application seeks less than half of the fee and expenses sought by Tracking Systems.

The Court finds that this case has been over-litigated by Tracking Systems Corporation and its counsel. The facts and record of this case do not support the hours expended and costs incurred by Tracking Systems to pursue its over-secured claim. Under these circumstances, they were neither necessary or reasonable. The Court finds that Tracking Systems would not have made the Loan unless it knew it would be fully secured. Moreover, it would not have purchased a majority interest in the other secured loan of the Debtor if it felt that the Loan was at risk.

Tracking Systems chose the safety of having two very competent law firms represent it, and it sought to excessively litigate. The Court finds that the actions of Tracking Systems were more in line with an attempt to acquire the Debtor than protect its over-secured claim. Accordingly, the Court finds that a reduction of fees and costs is appropriate, and awards fees and costs as follows:

a. Pepper, Hamilton & Scheetz, LLP

   Fees $15,000.00    Costs $4,000.00

b. Stearns, Weaver, Miller Weissler, Alhadeff & Sitterson, P.A.

   Fees $20,000.00    Costs $5,000.00

c. Tracking Systems Corporation

   Costs $5,000

In making the above award, the Court has considered the above legal principals in awarding fees for secured creditors, has considered the fee applications and the record in this case as cited above, and has considered the factors set forth in the case law for awarding fees in this District.