**In re Richard E. WARD, Ward Corporation, Debtors.**

**Bankruptcy No. 91-4-4040-PM.**

United States Bankruptcy Court,
D. Maryland,
at Greenbelt.

Dec. 26, 1995.

David Roseman, David Matuszewski, Jones, Day, Reavis & Pogue, Washington, DC, for Prudential Insurance Company of America.

Wendelin Lipp, Paley, Rothman, Goldstein, Rosenberg, & Cooper, Bethesda, MD, for Debtors.

Howard Walker, Jenkens & Gilchrist, Washington, DC, for NationsBank.

## MEMORANDUM OF OPINION

PAUL MANNES, Chief Judge.

Before the court is the Application of Jones, Day, Reavis & Pogue, counsel for the Prudential Insurance Company of America (the "Applicant") for Reimbursement of Attorney's Fees and Expenses Pursuant to Paragraph 3.10 of the Debtor's Plan and § 506(b) of the Bankruptcy Code. Prudential seeks reimbursement for counsel fees in the amount of $96,858.50, and reimbursement of counsel's out-of-pocket expenses in the amount of $4,606.94 for the period of August 29, 1991, through December 29, 1994. This court held a hearing on the application and the objection thereto on August 2, 1995.

This court has jurisdiction pursuant to 28 U.S.C. § 1334 (District Courts have original and exclusive jurisdiction of all cases under Title 11), and 28 U.S.C. § 157(a) and Maryland District Court Local Rule 402 (all cases under Title 11 as proceedings arising under Title 11 or arising in or related to cases under Title 11 are deemed referred to the Bankruptcy Judges of this District). This action constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (K) and (*O*).

Having considered the evidence and argument presented at the hearing held on this matter, the pleadings and exhibits pertinent thereto and the record herein, this court makes the following findings of fact and conclusions of law.

## I. BACKGROUND

On September 11, 1991, Ward Corporation ("debtor") filed a voluntary petition seeking reorganization under Chapter 11 of the Bankruptcy Code. Prior to this filing, Richard E. Ward ("Ward"), guarantor of the corporation's obligations, sought protection under Chapter 11 of the Bankruptcy Code on August 20, 1991. These two cases were substantively consolidated by Order of this court on April 23, 1992.

On or about March 9, 1979, Prudential Insurance Company of America ("Prudential") issued a permanent mortgage loan to the debtor in the amount of $3,425,000.00. Prudential alleged that the amount owing as of the petition date was approximately $3,068,672.00. The mortgage loan is secured by a duly recorded Deed of Trust and Security Agreement (collectively referred to as the "Loan Documents"). By virtue of these doc-

uments Prudential holds a first priority security interest in the Ward Office Building, the improvements thereon, and all rents and profits derived therefrom, as well as debtor's accounts receivable. A second and junior lien secures Maryland National Bank's claim in the original amount of $2.5 million.

The Ward Office Building is located at 1300 Piccard Drive, Rockville, Maryland and is one of the various commercial properties owned in whole or in part by the debtor and/or Ward individually. The property is fully leased. An appraisal performed in 1989 valued the land at $3,116,000 and the improvements at $6,160,000, for a total value of $9,283,000. This value is undisputed.

The Loan Documents provide for the payment of Prudential's attorney's fees and expenses as follows:

> In the event it shall become necessary to employ counsel to collect this obligation or to protect the security hereof, the Maker and any endorsers, guarantors, and sureties of the debt evidenced by this Note, hereby agree to pay reasonable attorneys' fees for legal services involved, whether suit be brought or not, and all other costs and expenses reasonably connected therewith.

Application of Prudential at 5 (citing The Note and Deed of Trust Modification Agreement dated March 15, 1979 at 8).

Debtor did not contend that it was not "necessary to employ counsel to collect this obligation or to protect the security hereof." Cf. U.S. v. Ron Pair Enterprises, Inc., 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). This may have been because of some strategic decision or for reasons of "professional courtesy" or otherwise. The court is hard pressed to recall during the course of this bankruptcy case any need of Prudential for collection efforts.

The Note and Deed of Trust further provide:

> If Trustee or Beneficiary shall be made a party to or shall intervene in any action or proceeding affecting the premises of the title thereto or the interest of Trustee or Beneficiary under this Deed of Trust, or if Beneficiary employs an attorney to collect any or all of the indebtedness secured hereby or to foreclose this Deed of Trust by judicial proceedings, or authorizes Trustee to conduct Trustee's sale proceeding hereunder, Trustee and Beneficiary shall be reimbursed by Trustor, immediately and without demand, for all reasonable costs, charges and attorney's fees incurred by them or either of them, in any such case, and the same shall be secured hereby as a further charge and lien upon the premises.

Id. at 5–6 (citing Note and Deed of Trust at 17). Debtors' Restated Revised Second Amended Plan of Reorganization was · confirmed by this court on December 29, 1994. Section 3.10 of the Plan provides for the treatment of Prudential's claim, including the reimbursement of reasonable attorney's fees and expenses, as determined by this court under § 506(b) of the Bankruptcy Code. Section 3.10 states, in pertinent part:

> Prudential shall apply to the Bankruptcy court pursuant to § 506(b) of the Bankruptcy Code for a determination of the reasonableness of its attorneys fees, costs, and other expenses incurred and charged by counsel ·for Prudential regarding its claim, from the Date of filing to the date of Confirmation. Upon the later of (i) the Effective Date, (ii) entry of a final, nonappealable order determining the amount and authority for payment, the attorney's fees, costs and expenses shall be added to Prudential's Allowed Claim, shall accrue interest at the contract rate, and shall be amortized over the term of the Plan, not to exceed eight years, with the unpaid balance due on maturity of the Prudential loan. The difference between the reamortized payment and the current regular payment of $29,455 shall be paid monthly from the cash flow of the building as a seventh priority under the proposed Collection and Security Agreement between MNB, Prudential and the Debtor, or at the Debtor's option, from funds of the Debtor, other than cash flow from WOBI.

On March 28, 1995, the Applicant filed its application under § 506(b) seeking reimbursement for attorney's fees and expenses (the "Application"). The Application details

a total of 514.75 hours expended by the attorneys and legal support staff from August 29, 1991, to December 29, 1994, that is, from the date that the petition was filed to the date of Plan confirmation.

Opposing the Application, the debtor requests that the court disallow approval of the Application for three reasons; first, that many of the services for which the Applicant seeks compensation were unnecessary, unwarranted, or noncompensable, second, that the Applicant overbilled for many services, and lastly, that the fees requested are excessive and unreasonable.

It is uncontradicted that throughout the history of this loan relationship, the debtor made all required payments when due and complied with all the requirements of the Loan Documents. No party in interest differed with the $9 million valuation, other than perhaps the holder .of the second lien that withdrew its motion under § 362(d) before it was heard.

The record does not suggest, nor does any party contend, that Prudential's interest in the Note and its collateral were not fully protected at all times. Thus, the risk was minimal that Prudential would not be paid in full the amount owed it.

## II. DISCUSSION

 Section 506(b) of the Bankruptcy Code permits an oversecured creditor to seek reimbursement for its attorney's fees and expenses. That section provides in relevant part:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

11 U.S.C. § 506(b). To sustain a claim for fees pursuant to this section a creditor must demonstrate that: (1) the creditor has an allowed secured claim; (2) the creditor is oversecured; (3) the agreement upon which the creditor's secured claim is based provides for the recovery of the fees and costs; and (4) the fees and costs are reasonable. *In re California Properties No. 1, Ltd.,* 132 B.R. 191, 192 (BC M.D.Ala.1991). The fees must be reasonable under the facts and circumstances of the case. Creditor's counsel does not have a blank check for automatic payment of fees and reimbursement of expenses. *In re Lund,* 187 B.R. 245, 251 (BC Ill.1995); *In re Oliver,* 183 B.R. 87, 91 (BC W.D.Pa. 1995); *In re Davidson Metals, Inc.,* 152 B.R. 917, 919 (BC N.D.Ohio 1993).

There is no dispute that Prudential was substantially oversecured at all times. Likewise, it is undisputed that the Loan Documents impose an express and specific obligation on the part of the debtor to pay the attorney's fees and costs if counsel is employed either to collect the obligation or to protect Prudential's security.[1] Thus, the single issue for determination is whether the fees and expenses incurred by the Applicant are reasonable and necessary under the circumstances of this case.

 Section 506(b) provides that an oversecured creditor may be compensated for "reasonable fees, costs or charges." Under § 506(b), "reasonable" fees has been interpreted as those fees which are *necessary* to the collection and protection of a creditor's claim." *In re Huhn,* 145 B.R. 872, 876 (W.D.Mich.1992); *In re Kroh Bros. Development Co.,* 105 B.R. 515, 521 (BC W.D.Mo. 1989) (emphasis added). An oversecured creditor is entitled to recover under § 506(b) those fees which were reasonably necessary to protect its interest. *In re Schriock Const., Inc.,* 176 B.R. 176, 183 (BC N.D.1994). The applicant has the burden of demonstrating the reasonableness of the fees and costs, regardless of whether an objection is filed. *In re Beverly Mfg. Corp.,* 841 F.2d 365 (CA11 1988); *Matter of U.S. Golf Corp.,* 639 F.2d 1197, 1207 (CA5 1981); *In re Gwyn,* 150 B.R.

---

1. It is important to note, that although Section 3.10 of the Plan provides that the debtor is responsible for the payment of Prudential's attorney's fees and costs, this court must nevertheless make a determination, under the standard enunciated in § 506(b), of whether the fees are reasonable and necessary. *In re Gwyn,* 150 B.R. 150, 154 (BC M.D.N.C.1993).

150, 154 (BC M.D.N.C.1993); *In re Bernard Hill, Inc.*, 133 B.R. 61, 69 (BC Md.1991) (Schneider, J.); *In re Kroh Bros. Development Co.*, 105 B.R. 515, 520 (BC W.D.Mo. 1989). It is equally well established that any determination made pursuant to § 506(b) is controlled by federal law. *Unsecured Creditors' Committee v. Walter E. Heller & Co. Southeast, Inc.*, 768 F.2d 580, 585 (CA4 1985); *see also In re Duralite Truck Body & Container Corp.*, 153 B.R. 708, 713 (BC Md.1993) (Derby, J.); *In re Harper*, 146 B.R. 438, 443–45 (BC N.D.Ind.1992); *In re Clark Grind & Polish, Inc.*, 137 B.R. 172, 175–76 (BC W.D.Pa.1992). This oversight ensures fairness to all creditors. *In re Korangy*, 106 B.R. 82, 85 (BC Md.1989). The court enjoys broad discretion in determining whether the proposed fees and costs are "reasonable." *In re Kroh Bros. Development Co.*, 105 B.R. 515, 520 (BC W.D.Mo.1989); *see also In re Stoecker*, 114 B.R. 980, 983 (BC N.D.Ill.1990).

■ Courts in this circuit have focused on the twelve "lodestar" factors outlined in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (CA5 1974), when determining the reasonableness of fees.[2] The factors are:

(1) time and labor required;

(2) novelty and difficulty of the questions raised;

(3) the skill required to properly perform the legal services rendered;

(4) the preclusion of other employment by the attorney due to the acceptance of the case;

(5) the customary fee charged for like work;

(6) whether the fee sought is fixed or contingent;

(7) the time limitations imposed by the client of the circumstances;

(8) the amount in controversy and the results obtained;

(9) the experience, reputation, and ability of the attorney;

(10) the "undesirability" of the case;

(11) the nature and length of the professional relationship between the attorney and the client; and

(12) attorney fee award in similar cases.

*Barber v. Kimbell's, Inc.*, 577 F.2d 216, 226 n. 8 (CA4 1978), *cert. denied*, 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978) (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (CA5 1974)); *In re Watson Seafood & Poultry Co., Inc.*, 40 B.R. 436, 439 (BC E.D.N.C1984). The Fourth Circuit noted, in *Harman v. Levin*, 772 F.2d 1150 (CA4 1985), that the "lodestar" factors are applicable when making a determination of all proper awards for attorney's fees in bankruptcy cases. *Id.* at 1152 n. 4. These factors are applicable to fee applications made pursuant to § 506(b). *See In re Breeden*, 180 B.R. 802, 808–9 (BC N.D.W.Va.1995).

## A. *Lumping of Services*

■ In determining the reasonableness of fees and costs, this court requires that the fee applications contain a certain level of content and specificity. *See In re Consolidated Properties Ltd. Partnership*, 152 B.R. 452, 459 (BC Md.1993) (Derby, J.). Courts have refused repeatedly to approve unitemized disbursements for services that are lumped together in a single entry, because such action inhibits the court from estimating the reasonableness of the individual services and their value to the debtor's estate. *Id.*; *see also In re Kroh Bros. Development Co.*, 105 B.R. 515, 522 (BC W.D.Mo.1989). In a comprehensive study of the problem, Judge James F. Schneider of this court instructed:

> [Lumping is a] practice universally disapproved by bankruptcy courts for two reasons. One, it permits an applicant to claim compensation for rather minor tasks which, if reported individually, would not be compensable. Two, it prevents the Court from determining whether individual tasks were expeditiously performed within a reasonable period of time because it is impossible to separate into components the services which have been lumped together.

---

**2.** The "lodestar analysis" was adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n. 28 (CA4), *cert. denied*, 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978), and made applicable to bankruptcy fee applications by *Harman v. Levin*, 772 F.2d 1150 (CA4 1985).

*In re Leonard Jed Co.,* 103 B.R. 706, 713 (BC Md.1989). Courts faced with time entries containing multiple tasks or services generally employ one of two courses of action. Some courts have denied fully all compensation requested for the lumped time entries. *See, e.g., In re Breeden,* 180 B.R. 802 (BC N.D.W.Va.1995). Other courts, however, have made a global adjustment for all the time lumped together. These courts simply reduce compensation for such entries by a certain percentage instead of denying all fees outright. *See, e.g., In re Adventist Living Ctrs., Inc.,* 137 B.R. 701, 706 (BC N.D.Ill. 1991). Recourse taken under either method is based solely on an applicant's failure to sustain its burden of proving the reasonableness of the fees provided. *In re Poseidon Pools of America, Inc.,* 180 B.R. 718, 731 (BC E.D.N.Y.1995). The action taken by courts does not necessarily suggest that the services provided were not beneficial to the estate. *In re Breeden,* 180 B.R. 802, 810 n. 7 (BC N.D.W.Va.1995).

In the instant case, there are many entries that not only contain multiple tasks or services, but also fail to provide a breakdown of the time spent for each individual task or service. This court counts approximately 110 entries totaling 152.25 hours where the tasks or services are lumped together and do not contain a breakdown of time spent on each task performed.[3] *See* Appendix B. This deficiency is compounded in many instances where the lumped entries also contain vague or inadequate descriptions of the services performed. As a result, it is impossible to assess the reasonableness of the compensation sought for the task or service performed. In reviewing the time sheets there were 93.25 hours amounting to $19,-319.10 [4] in fees where the court was unable to ascertain the reasonableness of the services performed because the tasks or services are not only improperly lumped together but also

contain vague or inadequate descriptions of the services or tasks performed. Many of the entries containing insufficient description involve telephone calls or conferences between attorneys. Some examples include:

| | | |
|---|---|---|
| 09/24/91 | 7.50 | Draft cash collateral agreement; telephone conference with W.J. and S.M.; meeting with D.R. regarding update; revise draft of cash collateral order; begin compiling materials for motion to sequester. |
| 10/15/91 | .50 | Telephone conferences with G.W. and S.M.; telephone conference with E.G. |
| 10/22/91 | .50 | Conference with P.P. regarding issues under negotiation; update status. |
| 11/12/91 | 1.50 | Telephone conference with W.J. regarding status of case; telephone conference with J.C. regarding open issues and case supervision; review additional clearance of conflicts reports. |
| 09/28/92 | 1.50 | Conference with P.P.; review correspondence; conference call with C.Z. and W.J. regarding negotiations and tactics; review file. |
| 10/18/93 | .50 | Review correspondence and pleadings; telephone conference with clients; telephone conference with debtor's counsel. |
| 06/16/92 | 2.75 | Conference with G.W. and his client; begin drafting letter regarding fit-up expenses; conference with M.I. at Ward Corp. |

Numerous entries contain vague phrases such as "prepare correspondence," "review new materials," "case supervision," "review project status," "project supervision," "attention to case development," and "update status." These phrases, without additional clarification or detail, provide no meaningful information to enable this court to make a determination as to the reasonableness of the services or tasks provided. Consequently, this court will not allow compensation for these fees.

---

**3.** This figure omits those entries containing numerous tasks or services which allocated a specific amount of time for each individual task or service performed. Likewise, this figure does not include entries containing multiple tasks which, in this court's opinion, reference related activities.

**4.** In order to determine a monetary figure for the amount of time spent of the various tasks or services, it was necessary for this court to calculate a blended rate for certain attorneys and support staff. In its application, the Applicant listed numerous rates for various attorneys and support staff making it difficult for this court to ascertain which services were performed at which rate. *See* Appendix A.

This court was able to resolve the ambiguities created with respect to a number of the lumped time entries. The ambiguity with respect to 59.00 of the 152.25 lumped hours was resolved, despite the Applicant's failure to sustain its burden. *See* Appendix B. Although the services or tasks in these entries are lumped together, this court was able to assess the reasonableness of the services or tasks provided and estimate within a reasonable degree of certainty the time spent on such services or tasks.

### B. *Clerical Tasks*

■ There are a number of time entries in the Application that represent services or tasks that are clerical in nature. When seeking compensation for clerical services performed by an attorney or a paralegal, an applicant must provide sufficient information enabling the court to make a determination as to why such services were performed by an attorney or paralegal as opposed to a paralegal or secretary, respectively. *In re Poseidon Pools of America, Inc.*, 180 B.R. 718, 745–46 (BC E.D.N.Y.1995). This burden goes directly to the court's ability to determine the reasonableness of the clerical services performed.[5] *Id.*

In the instant case, the Applicant seeks compensation for 9.00 hours totaling $756.50 for "preparing document binders"[6] and an additional 17.50 hours totaling $1,675.00 for "updating the pleadings file."[7] *See* Appendix C. In none of these entries does the Applicant explain why these services were performed by associate or paralegal as op-

posed to a paralegal or a secretary, respectively.[8] Consequently, these fees will not be allowed.

### C. *Reviewing Pleadings*

The Applicant seeks compensation for 30.25 hours spent reviewing pleadings.[9] This court finds significant that approximately 34 entries totaling 24.00 hours either fail to reference a specific pleading or provide such a vague description that this court was unable to determine the specific pleading reviewed. *See* Appendix D. Such failure has been held sufficient to render charges for those services noncompensable because the court is unable to determine the benefit to the estate. *In re Poseidon Pools of America, Inc.*, 180 B.R. 718, 742 (BC E.D.N.Y. 1995); *In re Leonard Jed Co.*, 103 B.R. 706, 714 (BC Md.1989) (Compensation denied for reviewing documents prepared by others, and failing to identify instances where substantive work was done in response to those documents); *In re Curtis*, 70 B.R. 712, 716 (BC E.D.Ark.1987) (Compensation denied where the itemization was not specific enough to allow the Court to properly identify the services rendered). Compensation in the amount of $5,507.25 therefore will be denied for these 24.00 hours spent for which the Applicant fails to provide any reference to a particular pleading, or provides only a vague description precluding this court from determining what was actually reviewed. *See* Appendix D.

---

5. This court is mindful of the decision of the Third Circuit in *In re Busy Beaver Building Centers, Inc.*, 19 F.3d 833 (CA3 1994), holding that, based on the plain meaning of § 330(a), clerical services may be compensable, however, at a reduced rate. That court noted that the clerical nature of the services affected the rate not the compensability of the services rendered. *Id.* at 849. As stated in *Poseidon Pools*, however, the *Busy Beaver Building* decision does not negate an applicant's burden of providing the court with sufficient information to make a determination as to the reasonableness and necessity of the clerical services performed. *Poseidon Pools*, 180 B.R. at 745–46. Failure to provide such information is fatal. *Id.*

6. This figure excludes any entries that were part of a lumped time entry.

7. This figure excludes any entries that were part of a lumped time entry.

8. With respect to the preparation of the document binders, an associate with a billing rate of 115.00 per hour billed 2.0 hours and a paralegal with a billing rate of 100.00 per hour billed 3.50 hours for these services. Additionally, a second paralegal billing at a rate of 47.00 per hour billed 3.50 hours for these services.

9. Actually, the total amount of time spent reviewing pleadings was significantly more than 30.25. This additional time, however, will be disallowed because it is contained in lumped time entries. Additionally, this figure does not include time entries for which the Applicant provided adequate descriptions of the pleadings reviewed. Compensation for these entries will be permitted.

A number of the above-referenced entries containing inadequate descriptions also raise other concerns. The court compared the docket to the time sheets provided by the Applicant. There were many instances where no new pleadings had been filed at or around the time the entry was made. Specifically, this court notes that on at least six occasions totaling 4.00 hours an entry was made to review pleadings even though no pleadings had been filed by either side in proximity to the Applicant's review of the pleadings.[10] *See* Appendix D. Additionally, there were at least five instances totaling 1.75 hours where only non-substantive pleadings, such as Orders Directing Course of Proceedings or Certificates of Service, were filed.[11] *See* Appendix D.

### D. Cash Collateral Orders

The Applicant seeks compensation totaling approximately 86.75 hours for the preparation of thirteen cash collateral orders. Specifically, the Applicants spent approximately 50.25 hours preparing the first cash collateral order and approximately 37.75 hours preparing cash collateral orders two through thirteen.

With respect to the first cash collateral order, this court will authorize compensation from the debtor for 27.25 hours. *See* Appendix E. The remaining amount of time spent on that one cash collateral order is contained in entries that lumped multiple tasks together.

With respect to the remaining twelve cash collateral orders, this court finds that the time spent on these orders was grossly excessive. It is remarkable that the Applicant claims to have spent 15.75 hours totaling $3,412.50 on cash collateral orders two, three, four, eight, nine, ten, twelve, and thirteen even though no substantive changes were made to those orders.[12]

The Applicant spent 7.50 hours on cash collateral orders five, six, seven, and eleven.[13] A review of these orders reveals that the substantive changes were minimal.[14] This court will nevertheless allow compensation for 7.50 hours spent preparing these orders.

### E. Miscellaneous Deductions

There are certain entries for which the Applicant cannot be compensated because they are described inadequately in the time sheets. "Where documentation of services is too vague or nonspecific to permit meaningful review, a court may not award compensation for such services." *In re Poseidon Pools of America, Inc.*, 180 B.R. 718, 730 (BC E.D.N.Y.1995); *In re Great Sweats, Inc.*, 113 B.R. 240, 245 (BC E.D.Va.1990) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) ("Where the documentation of hours is inadequate, the ... court may reduce the award accordingly.")).

There are numerous time entries concerning telephone calls for which there is insufficient information or detail. In order for a telephone call to be compensable, courts have stated that the entry must contain the purpose of the conversation, the length of the conversation, and the person involved in the conversation. *Id.* at 731. The reference to the purpose or subject matter of the telephone call must contain sufficient detail so that the court can properly evaluate the necessity or value of the conversation. *Id.*

A review of the time records reflects approximately 35 entries totaling 17.00 hours regarding telephone calls with vague descriptions, or simply no descriptions whatsoever. *See* Appendix F. Merely identifying the other party to the call does not enable this court to evaluate the reasonableness or necessity of the telephone call. None of the entries comprising the 17.00 hours contain any explanation as to the purpose of the telephone

---

**10.** The Applicant actually made a total of nine time entries. However, the other four instances are contained in the lumped time entries which will be disallowed for that reason.

**11.** Actually, the Applicant made a total of nine entries. However, the other five entries will be disallowed because they are contained in the lumped time entries.

**12.** This figure does not include entries that are contained in lumped time entries.

**13.** This figure does not include entries that are contained in lumped time entries.

**14.** The most substantive change to any of the orders involved a paragraph or two.

call. Some of the descriptions that raise this court's concern are listed as follows:

| | | |
|---|---|---|
| 10/07/91 | 1.00 | Extended telephone conference with counsel for the debtor. (Debtor's counsel billed .50 for this same call.) |
| 11/04/91 | .50 | Telephone conference with W.J. regarding bankruptcy issues. |
| 11/14/91 | .25 | Telephone conference with G.W. regarding issues. |
| 8/4/93 | .50 | Telephone conference with W.J. regarding active issues. |

Similarly, there are other entries for services or tasks that fail to contain adequate descriptions of that which was performed. The time sheets reveal 16 entries totaling 9.50 hours where the descriptions are so vague or inadequate that it is impossible for this court to evaluate whether the services rendered are reasonable. *See* Appendix F. This court lists the following examples:

| | | |
|---|---|---|
| 10/07/91 | 2.75 | Legal analysis and case planning. |
| 10/25/91 | 1.00 | Assist with arrangements for signing of agreement. |
| 07/14/92 | .25 | Prepare correspondence to W.J. |
| 08/26/92 | .25 | Review and conference with P.P. regarding claim. |

There are a total of 26.50 hours amounting to $4,719.57 in fees where this court is unable to determine the necessity or reasonableness of these services or tasks.

### F. *Lodestar Analysis*

With respect to the remaining fees, this court finds that the Applicant has sustained its burden of proof. Concern remains, however, with respect to the relationship among the extremely high amount of fees sought by the Applicant, Prudential's substantially oversecured position, and the fact that debtor never missed making a payment to Prudential.

Although this court enjoys broad discretion in determining the amount of attorney's fees and expenses to be awarded under § 506(b), *In re Kroh Bros. Development Co.*, 105 B.R. 515, 520 (BC W.D.Mo.1989), there are certain standards that must be considered when making this determination. Courts interpreting this section have made clear that § 506(b) does not provide an uninhibited mechanism for an oversecured creditor to obtain fees and expenses for its counsel to make up for unrelated, uncompensated or under-compensated work. "[T]he bankruptcy court has the responsibility of preventing overreaching by attorneys in their attempts to be paid attorneys' fees from the estate." *Id.* (citing *In re N.S. Garrott & Sons,* 54 B.R. 221 (BC E.D.Ark.1985)). Further, this court is bound to consider "the public interest inherent in awarding attorneys' fees in bankruptcy cases: 'An allowance is the result of a balance struck between moderation in the interest of the estate and its security holders and the need to be generous enough to encourage lawyers and others to render the necessary and exacting services that bankruptcy cases often require.'" *Id.* (quoting *In re Henning,* 55 B.R. 682, 684 (BC S.D.1985)).

Courts have noted repeatedly that counsel for oversecured creditors may not receive compensation, pursuant to § 506(b), for every action counsel might choose to take throughout the bankruptcy case. *See In re Davidson Metals, Inc.,* 152 B.R. 917, 921 (BC N.D.Ohio 1993). One court has noted that:

[I]t is clear that creditors are entitled to engage counsel and pay for constant, comprehensive, and aggressive representation, ... [but] where services are not reasonably necessary or where action is taken because of an attorney's excessive caution or overzealous advocacy, courts have the right and the duty, in the exercise of their discretion, to disallow fees and costs under § 506(b).

*In re Kroh Bros. Development Co.,* 105 B.R. 515, 521 (BC W.D.Mo.1989) (quoting *In re Wonder Corp. of America,* 72 B.R. 580, 591 (BC Conn.1987), *aff'd,* 82 B.R. 186 (D.Conn. 1988)). Consequently, while it is true that Prudential may employ any number of lawyers it desires, the costs incurred for "overlawyering" should be borne by the creditor rather than by the debtor. *In re Davidson Metals, Inc.,* 152 B.R. 917, 921 (BC N.D.Ohio 1993).

While this case involves a significant sum of money, the issues involving Prudential were not novel or difficult given Prudential's secure position and the debtor's exemplary payment history. Rather, they were comprised of the customary questions that coun-

sel would normally encounter in a contested bankruptcy case of this sort.

The Applicant is a highly qualified law firm that always has produced excellent work. The attorneys appearing before this court are knowledgeable, prepared and present themselves in a professional manner. As noted above, however, the issues with respect to Prudential were not complex.

The Applicant seeks compensation for many hours of service that do not reach the level of reasonableness and necessity to qualify for payment by the debtor. Many of the services rendered were an exercise of legal handholding undertaken at another's expense. Given this court's experience in other cases of this nature and its examination of this record, the court finds that the Applicant's total charges are excessive. Although these charges are not necessarily wrong or improper, such expense is more properly directed toward the creditor instead of the debtor.

The Applicant urges that all services were rendered at the direction of, and with the approval of, Prudential's in-house counsel. In *In re Gwyn,* 150 B.R. 150 (BC M.D.N.C. 1993), the court faced a similar situation. In awarding $1,500.00 to an applicant seeking an additional $15,308.95 in fees and expenses, the late Judge Jerry G. Tart instructed:

Section 506(b), recognizing the potential problems that may occur when the selector and user of legal services is separate from the payor of the services, imposes a limitation on the amount of contractually agreed upon fees that may be awarded to an oversecured creditor. *See In re Villa Capri [of Georgia ] Assocs. Ltd. Partnership,* 141 B.R. 257, 262 (Bankr.N.D.Ga.1992). One purpose of Section 506(b) is to ensure that estate assets are not squandered by oversecured creditors, who, believing that the debtor will be required to foot the bills, fail to exercise restraint in the attorneys' fees and expenses they incur, perhaps exhibiting excessive caution, over-zealous advocacy and hyperactive legal efforts. *See, e.g., In re Riker Indus., Inc.,* 122 B.R. 964, 973 (Bankr.N.D.Ohio 1990); *[In re ] Reposa,* 94 B.R. [257] at 261–62 [ (Bank.D.R.I. 1988) ]; *Wonder Corp.,* 72 B.R. at 591, *aff'd,* 82 B.R. 186 (D.Conn.1988). *Thus,*

UNUM's argument that all services were rendered at the direction, and with the approval, of UNUM's in-house counsel is not persuasive. The relevant question is not whether UNUM's counsel was acting with the appropriate authority from the client but whether the services rendered by UNUM's counsel were included within the scope of the Note and whether they were reasonable and necessary for collection of the Note.

The contract provision concerning the Debtor's agreement to pay UNUM's attorneys' fees must be strictly construed. *See, e.g., In re Tashjian,* 72 B.R. 968, 976 (Bankr.E.D.Pa.1987). The relevant loan document in this case entitles UNUM to collect only the "costs of collection and of suit and foreclosure, including reasonable attorneys' fees;" it does not entitle UNUM to be reimbursed for attorneys' fees incurred for any activity that UNUM chose to take in this case. *See Villa Capri,* 141 B.R. at 263. This court declines to conclude that a contract clause for attorneys' fees for collection efforts should be broadly read to include *all* services rendered in connection with the Debtor. *See In re Huhn,* 145 B.R. 872, 876 (W.D.Mich.1992) (over-secured creditor is not entitled to compensation for every action it takes by claiming that its rights have somehow been affected); *Tashjian,* 72 B.R. at 974–75, 976 (when note limited attorneys' fees to those incurred for "collection" activities, no attorneys' fees awarded for motion for relief from automatic stay); *In re United Nesco Container Corp.,* 68 B.R. 970, 974 (Bankr. E.D.Pa.1987) (contract clause providing for reimbursement of attorneys' fees for collection efforts should not be read broadly to include all services related to the collecting, including services performed in pursuit of creditor's claim in bankruptcy court). Although UNUM was free to pursue all legitimate actions against the Debtor in this case, UNUM is not entitled to compensation for all possible legal activity associated with the Debtor. *See, e.g., Villa Capri,* 141 B.R. at 263; *Kroh Bros.,* 105 B.R. at 521; *In re Masnorth Corp.,* 36 B.R. 335, 339 (Bankr.N.D.Ga.1984).

*Id.* at 155 (Emphasis added). The fact that Prudential found these services reasonable

and necessary is not a litmus test and does not render the debtor obligated to pay for those services.

Applications for compensation such as the one at hand are subjected to objective and subjective scrutiny. While the former is easier to explain, it is not as objective as courts would have the public think. The criticisms voiced are mainly matters of degree and are approximations at best. More than $26,-000.00 of the compensation request fails under the "objective" test. The court further finds that an overall "subjective" diminution is appropriate. Considering the circumstances of this case, the court believes that a 20–40% reduction in debtor's responsibility for payment of overall fee is justified by the irrelevant and unnecessary character of the services rendered. As stated above, there was no action required to collect the obligation nor was the security in peril. Prudential is entitled to the cost of a watching brief and reimbursement of costs associated with some discrete tasks such as those dealing with cash collateral and confirmation issues.

### III. CONCLUSION

For the foregoing reasons, the court will reduce the Applicant's award for compensation. The court will, however, award reimbursement of expenses in the sum of $4,606.94, as this amount does not appear to be unreasonable given the size and length of this case. The debtor will be ordered to pay to counsel for Prudential $62,000.00 of the $96,858.00 sought as compensation for the period from August 29, 1991, through December 29, 1994. Reductions are caused by inadequacies in the application as well as by the reluctance of the court to impose upon debtor the costs incurred by Prudential that were neither reasonable nor necessary under the circumstances of this case.

An appropriate order will be entered.

### APPENDIX A
### BLENDED BILLING RATE FOR ATTORNEYS AND PARAPROFESSIONALS

| | | |
|---|---|---|
| DCR | - | $240.00 |
| KAH | - | $204.00 |
| PJP | - | $117.50 |
| DMM | - | $142.67 |
| NJK | - | $102.00 |
| WJJ | - | $ 47.00 |

### APPENDIX B
### LUMPED TIME ENTRIES

**Lumped Time Entries—Total Hours 152.25**

| | | | | |
|---|---|---|---|---|
| * | 1. | 9/12/91 | DCR | 1.50 |
| | 2. | 9/24/91 | PJP | 7.50 |
| | 3. | 9/24/91 | WJJ | 1.75 |
| * | 4. | 9/25/91 | PJP | 8.50 |
| | 5. | 10/15/91 | PJP | 0.50 |
| * | 6. | 10/17/91 | PJP | 0.75 |
| * | 7. | 10/21/91 | PJP | 7.50 |
| | 8. | 10/21/91 | WJJ | 2.00 |
| | 9. | 10/22/91 | DCR | 0.50 |
| * | 10. | 10/22/91 | PJP | 8.50 |
| | 11. | 10/23/91 | PJP | 4.75 |
| | 12. | 11/1/91 | PJP | 0.25 |
| | 13. | 11/12/91 | DCR | 1.50 |
| * | 14. | 11/21/91 | PJP | 0.50 |
| | 15. | 12/27/91 | DCR | 0.50 |
| | 16. | 1/24/92 | DCR | 0.50 |
| | 17. | 5/7/92 | DCR | 0.75 |
| | 18. | 6/16/92 | PJP | 2.75 |
| | 19. | 6/22/92 | PJP | 1.25 |
| | 20. | 7/2/92 | DCR | 0.50 |
| | 21. | 9/24/92 | DCR | 1.75 |
| | 22. | 9/28/92 | DCR | 1.50 |
| | 23. | 10/12/92 | DCR | 2.25 |
| | 24. | 10/13/92 | DCR | 2.25 |
| * | 25. | 11/4/92 | DCR | 0.50 |
| | 26. | 11/5/92 | DCR | 1.00 |
| | 27. | 11/12/92 | DCR | 1.25 |
| * | 28. | 11/30/92 | DCR | 1.75 |
| | 29. | 12/3/92 | DCR | 0.50 |
| | 30. | 12/29/92 | DCR | 1.25 |
| | 31. | 1/7/93 | DCR | 1.50 |
| | 32. | 1/11/93 | DMM | 1.75 |
| | 33. | 1/14/93 | DCR | 2.25 |
| * | 34. | 1/21/93 | DCR | 1.25 |
| | 35. | 2/8/93 | DCR | 2.75 |
| | 36. | 2/9/93 | DCR | 1.75 |
| | 37. | 2/10/93 | DCR | 1.00 |
| | 38. | 2/23/93 | DCR | 1.00 |
| * | 39. | 2/24/93 | DCR | 1.50 |
| | 40. | 2/25/93 | DCR | 0.50 |
| | 41. | 3/1/93 | DCR | 0.50 |
| * | 42. | 3/4/93 | DCR | 1.50 |
| | 43. | 3/8/93 | DCR | 2.25 |
| | 44. | 3/16/93 | DCR | 0.75 |
| | 45. | 4/1/93 | DCR | 0.50 |
| | 46. | 4/14/93 | DCR | 1.00 |
| | 47. | 4/22/93 | DCR | 1.25 |
| | 48. | 5/12/93 | DCR | 1.00 |
| * | 49. | 5/25/93 | DMM | 0.25 |
| | 50. | 6/8/93 | DCR | 1.50 |
| | 51. | 6/16/93 | DCR | 1.00 |
| | 52. | 6/17/93 | DCR | 1.75 |
| | 53. | 7/6/93 | DCR | 0.75 |
| | 54. | 7/8/93 | DCR | 1.00 |
| | 55. | 7/19/93 | DCR | 0.50 |
| | 56. | 7/23/93 | DCR | 0.50 |
| * | 57. | 7/28/93 | DCR | 0.50 |
| | 58. | 7/29/93 | DCR | 1.00 |
| * | 59. | 8/3/93 | DMM | 3.00 |

| | | | | |
|---|---|---|---|---|
| * | 60. | 8/20/93 | DCR | 1.75 |
| | 61. | 9/10/93 | DCR | 0.75 |
| | 62. | 9/16/93 | DCR | 1.00 |
| | 63. | 9/20/93 | DCR | 0.75 |
| | 64. | 9/22/93 | DCR | 1.25 |
| * | 65. | 9/27/93 | DCR | 1.25 |
| * | 66. | 9/28/93 | DCR | 0.50 |
| | 67. | 10/18/93 | DCR | 0.50 |
| | 68. | 10/19/93 | DCR | 0.25 |
| * | 69. | 10/22/93 | DCR | 0.75 |
| | 70. | 10/25/93 | DCR | 0.25 |
| | 71. | 11/1/93 | DCR | 0.75 |
| | 72. | 11/4/93 | DCR | 2.75 |
| * | 73. | 11/16/93 | DCR | 1.75 |
| | 74. | 11/23/93 | DCR | 0.50 |
| * | 75. | 11/30/93 | DCR | 0.75 |
| * | 76. | 1/3/94 | DCR | 1.00 |
| * | 77. | 1/14/94 | DCR | 0.50 |
| | 78. | 1/17/94 | DCR | 1.25 |
| | 79. | 2/3/94 | DCR | 0.50 |
| | 80. | 2/8/94 | DCR | 1.25 |
| | 81. | 2/14/94 | DCR | 0.50 |
| * | 82. | 2/23/94 | DCR | 0.50 |
| | 83. | 2/25/94 | DCR | 0.25 |
| | 84. | 4/5/94 | DCR | 1.00 |
| | 85. | 4/11/94 | DCR | 0.75 |
| | 86. | 4/13/94 | DCR | 1.25 |
| * | 87. | 4/28/94 | DCR | 1.25 |
| | 88. | 5/4/94 | DMM | 0.25 |
| | 89. | 5/12/94 | DCR | 1.00 |
| | 90. | 5/23/94 | DCR | 1.25 |
| * | 91. | 5/24/94 | DCR | 1.00 |
| * | 92. | 6/10/94 | DCR | 0.25 |
| | 93. | 6/13/94 | DCR | 1.25 |
| | 94. | 6/14/94 | DCR | 1.25 |
| | 95. | 6/15/94 | DCR | 0.75 |
| | 96. | 6/17/94 | DCR | 1.25 |
| * | 97. | 7/21/94 | DCR | 1.25 |
| * | 98. | 8/12/94 | DCR | 1.75 |
| * | 99. | 8/16/94 | DCR | 0.50 |
| * | 100. | 8/18/94 | DCR | 0.75 |
| * | 101. | 9/23/94 | DCR | 1.00 |
| | 102. | 9/29/94 | DCR | 1.00 |
| | 103. | 10/20/94 | DCR | 0.50 |
| | 104. | 10/24/94 | DCR | 2.25 |
| * | 105. | 11/8/94 | DCR | 0.75 |
| | 106. | 11/14/94 | DCR | 1.25 |
| | 107. | 12/9/94 | DCR | 1.25 |
| * | 108. | 12/16/94 | DCR | 1.50 |
| * | 109. | 12/21/94 | DCR | 1.50 |
| * | 110. | 12/28/94 | DCR | 1.25 |

\*—HOURS ALLOWED—TOTAL—59 HOURS

## APPENDIX C
### CLERICAL

A. Document Binders—
 Hours Not Allowed—9 hours

| | | | |
|---|---|---|---|
| 1. | 9/18/91 | PJP | 1.00 |
| 2. | 9/19/91 | PJP | 1.00 |
| 3. | 9/20/91 | WJJ | 1.25 |
| 4. | 9/27/91 | WJJ | 1.75 |
| 5. | 10/4/91 | WJJ | 0.50 |
| 6. | 8/6/93 | NJK | 2.25 |
| 7. | 10/17/93 | NJK | 1.25 |

B. Update Pleadings File—
 Hours Not Allowed—17.5 hours

| | | | |
|---|---|---|---|
| 1. | 10/16/91 | WJJ | 0.50 |
| 2. | 10/18/91 | WJJ | 0.75 |
| 3. | 10/22/91 | WJJ | 0.50 |
| 4. | 11/26/91 | WJJ | 0.25 |
| 5. | 9/16/92 | NJK | 1.50 |
| 6. | 9/21/92 | NJK | 0.50 |
| 7. | 11/5/92 | NJK | 1.00 |
| 8. | 5/11/93 | NJK | 1.75 |
| 9. | 6/16/93 | NJK | 0.75 |
| 10. | 7/9/93 | NJK | 1.00 |
| 11. | 8/11/93 | NJK | 1.00 |
| 12. | 8/12/93 | NJK | 2.00 |
| 13. | 8/20/93 | NJK | 0.75 |
| 14. | 8/31/93 | NJK | 1.25 |
| 15. | 9/15/93 | NJK | 1.00 |
| 16. | 11/19/93 | NJK | 0.50 |
| 17. | 11/22/93 | NJK | 1.25 |
| 18. | 12/20/93 | NJK | 0.50 |
| 19. | 1/4/94 | NJK | 0.75 |

## APPENDIX D
### REVIEW PLEADINGS

A. Entries Failing to Reference a Specific
 Pleading or Containing Vague Descrip-
 tion—24 Hours

| | | | | |
|---|---|---|---|---|
| | 1. | 10/18/91 | PJP | 1.50 |
| | 2. | 11/26/91 | DCR | 0.50 |
| | 3. | 9/2/92 | NJK | 0.50 |
| | 4. | 11/18/92 | DCR | 0.50 |
| o | 5. | 11/20/92 | DCR | 0.25 |
| o | 6. | 12/15/92 | DCR | 0.50 |
| | 7. | 1/6/93 | DCR | 1.25 |
| + | 8. | 1/25/93 | DCR | 1.25 |
| + | 9. | 2/16/93 | DCR | 0.50 |
| | 10. | 3/5/93 | DCR | 1.25 |
| | 11. | 3/15/93 | DCR | 1.00 |
| | 12. | 5/3/93 | DCR | 0.50 |
| | 13. | 5/17/93 | DCR | 0.50 |
| + | 14. | 7/9/93 | DCR | 0.50 |
| + | 15. | 7/21/93 | DCR | 0.50 |
| | 16. | 8/4/93 | DCR | 0.75 |
| | 17. | 8/12/93 | DCR | 1.00 |
| | 18. | 8/19/93 | DCR | 0.25 |
| | 19. | 8/25/93 | DCR | 0.50 |
| + | 20. | 8/26/93 | DCR | 0.75 |
| + | 21. | 8/27/93 | DCR | 0.50 |
| | 22. | 9/3/93 | DCR | 0.50 |
| o | 23. | 9/9/93 | DCR | 0.25 |
| o | 24. | 9/15/93 | DCR | 0.50 |
| | 25. | 11/19/93 | DCR | 0.50 |
| | 26. | 4/4/94 | DCR | 0.50 |
| | 27. | 4/6/94 | DCR | 1.25 |
| | 28. | 5/2/94 | DCR | 1.25 |
| | 29. | 5/4/94 | DCR | 1.00 |
| | 30. | 5/10/94 | DCR | 1.00 |
| | 31. | 5/27/94 | DCR | 1.50 |
| | 32. | 9/9/94 | DCR | 0.50 |
| o | 33. | 11/23/92 | DCR | 0.25 |
| | 34. | 7/23/92 | DCR | 0.25 |

| | | | |
|---|---|---|---|
| + | = | No new pleadings—4 hours |
| o | = | No substantive pleadings—1.75 hours |

## APPENDIX E

### CASH COLLATERAL ORDERS

A. 1st Cash Collateral Order—Hours Allowed—27.25

| | | | |
|---|---|---|---|
| 1. | 9/20/91 | PJP | 0.75 |
| 2. | 9/23/91 | PJP | 4.00 |
| 3. | 9/26/91 | PJP | 1.25 |
| 4. | 9/27/91 | PJP | 2.25 |
| 5. | 9/27/91 | PJP | 1.50 |
| 6. | 9/30/91 | PJP | 0.50 |
| 7. | 10/3/91 | DCR | 0.50 |
| 8. | 10/8/91 | PJP | 1.00 |
| 9. | 10/8/91 | PJP | 0.25 |
| 10. | 10/8/91 | PJP | 0.25 |
| 11. | 10/16/91 | PJP | 0.75 |
| 12. | 10/21/91 | DCR | 2.00 |
| 13. | 10/25/91 | PJP | 1.75 |
| 14. | 10/29/91 | PJP | 2.75 |
| 15. | 11/11/91 | PJP | 1.25 |
| 16. | 11/12/91 | PJP | 2.50 |
| 17. | 11/13.81 | PJP | 2.25 |
| 18. | 11/15/91 | PJP | 1.25 |
| 19. | 11/19/91 | PJP | 0.50 |

B. 2nd Cash Collateral Order—Hours Allowed—0

C. 3rd Cash Collateral Order—Hours Allowed—0.75

| | | | |
|---|---|---|---|
| 1. | 5/1/92 | PJP | 0.75 |

D. 4th Cash Collateral Order—Hours Allowed—2.25

| | | | |
|---|---|---|---|
| 1. | 5/28/92 | PJP | 0.25 |
| 2. | 6/17/92 | PJP | 1.50 |
| 3. | 6/25/92 | PJP | 0.50 |

E. 5th Cash Collateral Order—Hours Allowed—4.50

| | | | |
|---|---|---|---|
| 1. | 8/6/92 | PJP | 0.75 |
| 2. | 8/10/92 | PJP | 1.50 |
| 3. | 8/11/92 | PJP | 1.75 |
| 4. | 8/14/92 | PJP | 0.50 |

F. 6th Cash Collateral Order—Hours Allowed—0

G. 7th Cash Collateral Order—Hours Allowed—2.00

| | | | |
|---|---|---|---|
| 1. | 1/13/93 | DCR | 1.00 |
| 2. | 2/3/93 | DCR | 0.75 |
| 3. | 2/8/93 | DCR | 0.25 |

H. 8th Cash Collateral Order—Hours Allowed—1.75

| | | | |
|---|---|---|---|
| 1. | 4/20/93 | DCR | 0.50 |
| 2. | 4/28/93 | DCR | 1.25 |

I. 9th Cash Collateral Order—Hours Allowed—0

J. 10th Cash Collateral Order—Hours Allowed—8.75

| | | | |
|---|---|---|---|
| 1. | 10/7/93 | DCR | 2.00 |
| 2. | 10/12/93 | DCR | 6.75 |

K. 11th Cash Collateral Order—Hours Allowed—1.00

| | | | |
|---|---|---|---|
| 1. | 12/30/93 | DCR | 1.00 |

L. 12th Cash Collateral Order—Hours Allowed—1.25

| | | | |
|---|---|---|---|
| 1. | 1/31/94 | DCR | 0.75 |
| 2. | 2/1/94 | DCR | 0.50 |

M. 13th Cash Collateral Order—Hours Allowed—1.00

| | | | |
|---|---|---|---|
| 1. | 4/29/94 | DCR | 0.75 |
| 2. | 5/2/94 | DCR | 0.25 |

N. 1 Entry Beyond Filing of Final Cash Collateral Order—Hours Allowed—1.25

| | | | |
|---|---|---|---|
| 1. | 7/1/94 | DCR | 1.25 |

This appendix does not include entries that this court will disallow as "lumped."

## APPENDIX F

### MISCELLANEOUS DEDUCTIONS

A. Telephone Conferences—Hours Not Allowed—17.00

| | | | | |
|---|---|---|---|---|
| 1. | 9/26/91 | (3 entries) | PJP | 1.00 |
| 2. | 9/27/91 | (3 entries) | PJP | 1.25 |
| 3. | 10/7/91 | (2 entries) | DCR | 1.50 |
| 4. | 10/9/91 | | PJP | 1.50 |
| 5. | 10/24/91 | | PJP | 0.25 |
| 6. | 11/4/91 | | DCR | 0.50 |
| 7. | 11/14/91 | | PJP | 0.25 |
| 8. | 5/7/92 | | PJP | 1.75 |
| 9. | 6/24/92 | | PJP | 0.50 |
| 10. | 9/23/92 | | PJP | 1.25 |
| 11. | 9/29/92 | | PJP | 0.50 |
| 12. | 10/30/92 | | DCR | 0.25 |
| 13. | 2/19/93 | | DCR | 0.25 |

| 14. | 6/15/93 | | DCR | 1.50 |
| 15. | 8/4/93 | | DCR | 0.50 |
| 16. | 8/11/93 | | DCR | 0.25 |
| 17. | 8/27/93 | | DCR | 0.25 |
| 18. | 9/14/93 | | DCR | 0.25 |
| 19. | 10/11/93 | | DCR | 0.25 |
| 20. | 10/14/93 | (3 entries) | DCR | 1.25 |
| 21. | 10/21/93 | | DCR | 0.25 |
| 22. | 10/29/93 | | DCR | 0.25 |
| 23. | 11/9/93 | | DCR | 0.25 |
| 24. | 11/19/93 | | DCR | 0.25 |
| 25. | 3/9/94 | | DCR | 0.25 |
| 26. | 3/23/94 | | DCR | 0.25 |
| 27. | 6/9/94 | | DCR | 0.25 |
| 28. | 12/23/94 | | DCR | 0.25 |

**MISCELLANEOUS DEDUCTIONS**

B. **Inadequate Descriptions—Hours Not Allowed—9.5**

| 1. | 9/26/91 | PJP | 0.50 |
| 2. | 10/7/91 | DCR | 2.75 |
| 3. | 10/16/91 | DCR | 0.25 |
| 4. | 10/25/91 | WJJ | 1.00 |
| 5. | 11/26/91 | PJP | 0.25 |
| 6. | 5/22/92 | PJP | 0.25 |
| 7. | 7/14/92 | PJP | 0.25 |
| 8. | 8/25/92 | PJP | 0.50 |
| 9. | 8/26/92 | DCR | 0.25 |
| 10. | 9/25/92 | PJP | 0.50 |
| 11. | 8/11/93 | DCR | 0.75 |
| 12. | 8/16/93 | DMM | 0.50 |
| 13. | 9/10/93 | KAH | 0.25 |
| 14. | 10/14/93 | DCR | 0.50 |
| 15. | 10/26/93 | NKK | 0.75 |
| 16. | 5/4/94 | DCR | 0.25 |