**In re JEMPS, INC., Debtor.**

**No. 02–10491.**

United States Bankruptcy Court,
D. Wyoming.

Aug. 1, 2005.

---

Ken McCartney, The Law Offices of Ken McCartney, P.C., George Jensen, Paul Hunter, Cheyenne, WY, Drew A. Perkins, Casper, WY, for Debtor.

### ORDER ON DEBTOR'S OBJECTION TO ATTORNEY FEES AS CHARGED TO AND ADDED ON TO THE CLAIM OF CENTRAL BANK AND TRUST

PETER J. MCNIFF, Bankruptcy Judge.

On July 22, 2005, the court held a hearing on the "Debtor's Objection to Attorney Fees as Charged to and Added on to the Claim of Central Bank and Trust" (Claim Objection). The debtor, Jemps, Inc. (Jemps), was represented by Ken McCartney. Central Bank and Trust (CBT) appeared through counsel, Donn McCall.

When this case was filed, CBT held five promissory notes from Jemps, secured by first priority liens on the debtor's real property, restaurant equipment and a liquor license. CBT filed a proof of claim for $399,843.00 as of the date of filing, November 13, 2002. The claim included principal, interest, and prepetition attorney fees for the law firm of Fasse & Miller of $20,674.20. Jemps scheduled the value of the CBT collateral at $800,000. At no time did CBT have reason to believe it was an undersecured creditor or that its collateral was in jeopardy.

This case did not progress smoothly. Jemps consecutively employed three different attorneys and filed four different reorganization plans proposing three different payment schemes. Early in the case, Jemps proposed a liquidation of the assets and hired a real estate agent to that end. No buyer was found.

In December 2003, Jemps leased its restaurant business to Sanford's Pub & Grub, Inc. (Sanford's). The lease contained a purchase option provision. Jemps filed a chapter 11 plan which proposed a long term payout to CBT. The plan prompted objections. A fourth reorganization plan was filed in response to the court's order setting a deadline. The debtor ignored the court's October 7, 2004 order requiring an amended plan. The debtor basically was delaying the case in an effort to find a buyer for the assets at a price the debtor thought sufficient.

The relationship between Jemps and Sanford's quickly deteriorated. Although

Jemp's principal officer testified that Jemps' problems with Sanford's had been resolved, Jemps gave Sanford's a notice of default under the lease.

CBT was flummoxed. During this period, CBT filed a motion to dismiss or convert the debtor's case for delay and inability to effectuate a plan. The court held two hearings on the motion and supplement to the motion, ordering the debtor to make progress in the case.

On August 25, 2004, Jemps withdrew its fourth chapter 11 plan from confirmation and filed a motion to sell the restaurant business to Sanford's for $850,000. However, neither the debtor's principal officer nor its counsel was instrumental in preparing or reviewing documents necessary to close the sale. Jemps provided little in the way of necessary information to the closing agent. As a result of the inaction by Jemps, counsel for CBT and Sanford's took all steps necessary to complete the sale closing within the time period established by the lease/option. CBT's allegations that Jemps had found a different buyer for a higher selling price and did not want to close the Sanford's sale are unrefuted by Jemps.

Ultimately, the debtor liquidated a substantial portion of the estate's assets (the real property, restaurant equipment and liquor license) for $850,000, from which all of the creditors were paid in full. From June 2004, the debtor has not actively pursue confirmation of a chapter 11 plan. The debtor intends to seek a dismissal of this case as soon as a final order is entered on the Claim Objection.

CBT did not file a motion for allowance of its attorney fees under 11 U.S.C. § 506(b). Instead, it demanded a total payout of $ 598,116.93 at the closing. The payout included attorney fees of $145,007.89. The attorney fees include $96,452.74 ($91,174.51 fees and $5,278.23

expenses) billed by the law firm of Brown, Drew & Massey, LLP (Brown Drew) and $48,555.15 for fees billed by the law firm of Miller & Fasse, P.C. (Fasse). The debtor paid the attorney fees under protest and filed this Claim Objection.

### *Discussion*

Jemps separates the CBT attorney fees into three categories: prepetition foreclosure fees; fees incurred for postpetition bankruptcy services; and fees incurred in the sale transaction. Jemps concedes the prepetition foreclosure fees are reasonable, objects that the chapter 11 fees are excessive, and disputes a portion of the transactional fees were necessary or reasonable.

*Jurisdiction*

The court has jurisdiction to determine § 506(b) attorney fees under 28 U.S.C. §§ 157(a) & 1334(a). The matter is a core proceeding under § 157(b)(2)(B).

However, CBT contends the court is without jurisdiction over this particular fee dispute because the debtor intends to dismiss this case as soon as a final order is entered. CBT argues that any order under § 506(b) would be an advisory opinion only, vacated by 11 U.S.C. § 349 on dismissal.

The purpose of § 349 is to restore the rights of the parties as they existed when the petition was filed. *In re Derrick,* 190 B.R. 346, 350 (Bankr. W.D.Wis.1995). The application of the section is quite narrow. *In re Ramirez,* 283 B.R. 156, 160 (Bankr.S.D.N.Y.2002). The proceedings and transfers which are reinstated and the orders which are vacated upon dismissal are explicitly addressed in § 349, and generally deal with lien and transfer avoidance. A claim allowance order and an order allowing attorney fees under § 506(b) are not among those orders enumerated.

In this case, the parties cannot be, and do not desire to be, restored to their pre-petition positions. CBT's claim has been paid in full.

CBT also suggests the debtor should pursue a determination of the reasonableness of the fees in state court. Such a determination, based on Wyoming law, may not apply the federal bankruptcy law attendant to § 506(b). Further, a state court action would result in a further resources expended by both parties to the same end. The court concludes the order will not be vacated by § 349, and the court has jurisdiction over this matter.

*Attorney Fees*

■ In § 506(b), the Bankruptcy Code provides that a creditor shall be allowed a secured claim for "fees, costs and charges" to the extent the contract so provides, the fees are reasonable, and the value of the collateral exceeds the total amount of the claim. The dispute in this case is over the reasonableness of the fees charged. The question of whether fees are reasonable is one of federal law. *In re Lederman Enterprises, Inc.*, 106 B.R. 674 (Bankr. D.Colo.1989).

■ The Tenth Circuit Court of Appeals adopted the standards for making a determination of reasonableness set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–719 (5th Cir.1974). *In re Permian Anchor Services, Inc.*, 649 F.2d 763 (10th Cir.1981). The court calculates the lodestar amount of a fee, and then adjusts the fees in accordance with the circumstances of the case. *Robinson v. City of Edmond*, 160 F.3d 1275 (10th Cir.1998).

■ The reasonableness determination is made within the context of the court's own knowledge, experience and expertise. Expert testimony is unnecessary. The court need not undertake a line by line review of entries, but may make a subjective judgment based on the entire circumstances presented. *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1201 (10th Cir.1986).

■ In a case where fees are sought as part of a secured claim under § 506(b), other factors are considered also. The fact that a creditor is oversecured inherently provides protection of the claim. Thus, the creditor is only entitled to include services reasonably required to protect its interest in the loan. *In re Villa Capri of Ga. Assoc. Ltd.*, 141 B.R. 257, 263 (Bankr.N.D.Ga.1992). Overzealousness will not be compensated, even if the creditor approves of such action by its counsel. *In re Huhn*, 145 B.R. 872, 877 (W.D.Mich. 1992). If fees are not permitted as part of the secured claim, the attorney may still be compensated by the creditor/client.

In this case, application of the lodestar analysis is impossible. Although the entries are detailed, the Brown Drew application is not segregated by task. Rather, each day's services are lumped together with a total number of hours and fees calculated. However, the hourly rates charged are reasonable, i.e., $125 per hour for the Fasse firm and $185 per hour charged by Brown Drew.

■ Taking the objections in reverse order, the court believes the fees incurred in preparing documentation for the title company to facilitate closing the sale transaction were completely justified. Those fees, from November 15, 2004 forward, total $8,845. For whatever reason, the debtor effectively abdicated its responsibility to Brown Drew and counsel for Sanford's. Had Jemps been legitimately concerned about the costs of closing the sale, Jemps would have cooperated to that end or performed the work itself.

█ The remainder of the fees incurred were for services performed for CBT during the chapter 11 reorganization process. They total $82,329.51 for Brown Drew and $27,880.95 for Fasse.

The services billed included noncompensable items such as many "Search PACER system and download docket report," entries that are clerical in nature. The services include what appears to be duplication of effort between the firms, such as Fasse: "Review and final objections to disclosure statement" & Brown Drew: "Draft and preparation of objection of Bank to adequacy of proposed disclosure statement." There are charges by both firms for inter-office telephone conferences which may or may not have been necessary. The extent of the Fasse firm's involvement was excessive, given that CBT had hired bankruptcy counsel after the chapter 11 case was filed.

Further, the Brown Drew entries clearly demonstrate thoroughness to the point of overzealousness. For example, entries are made for over four hours to review one disclosure statement and approximately six hours to draft an objection to disclosure. These excessive attorney fees were incurred at a time when CBT knew its claim was protected by the value of its collateral.

On the other hand, services were performed to prosecute a motion to dismiss or convert, which assisted in moving the case forward. The review of four separate disclosure statements and plans of reorganization was necessary. The fees were incurred in response to Jemp's delay and its efforts to manipulate the system until a buyer could be found for the property. From the time the second plan was filed, there was no honest effort by the debtor to move the case forward to confirmation or a timely conclusion.

On balance, the court concludes that one half of the Fasse firm's fees incurred during the chapter 11 process should be allowed as reasonable, i.e., $13,940. The court will allow fees incurred for services performed by Brown Drew during the reorganization process of $60,000.

IT IS, THEREFORE, ORDERED:

1. The debtor's claim objection is sustained; and

2. Central Bank & Trust is allowed a secured claim for reasonable attorney fees of $103,460 and expenses of $5,278.23 under 11 U.S.C. § 506(b).